POWELL and others *v.* MYERS.

*Common carriers* of passengers and their baggage, are liable for the latter until its safe delivery to the owner; its delivery upon a *forged* order will not discharge them.

*It seems,* however, that though the arrival of a steam-boat at its place of destination with the baggage in safety, will not discharge the carrier until its delivery to the owner, still unless demanded *within a reasonable time,* the liability of the owner of the boat in his strict character of a *common carrier,* will not continue.

ERROR from the Supreme Court. Myers brought an action in the common pleas of New-York against Powell and others as common carriers, for the loss of a trunk and its contents, taken on board a steamboat owned by the defendants, at West Point, by a son of the plaintiff, who, at the time, was a minor, and took passage in the boat for New-York. The boat usually left *Newburgh* at *five* o'clock P. M., and arrived at New-York between *nine* and *ten* the same evening. Shortly before arriving at the dock, a young man named *Pruyn,* who accompanied the plaintiff's son from West Point, in his presence enquired of the master of the boat whether their baggage would be safe on board the boat during the night; who answered that it would be perfectly safe, for they stationed a watch for its protection until morning. Passengers occasionally stayed on board during the night, but usually left the boat on arriving at the city. *Pruyn* stayed on board, but the plaintiff's son left the boat soon after its arrival, and on the next morning at about *eight* o'clock went to the boat for his trunk, and then learnt that it had been delivered on a *forged* order. A negro man had come on board and presented an order for the trunk. The master of the boat pointed it out to the negro. *Pruyn,* who was present, observed that the trunk had been left in his charge. The master of the boat said there was an order for it, when *Pruyn* said very well, and told the negro to take it. The

1841.

Powell
*v.*
Myers.

judge charged the jury that the defendants were responsible for the delivery of the baggage of travellers in their boat, unless lost by inevitable accident; that if the trunk had not been delivered to the passenger, and was not so lost, the defendants remained liable even after the boat arrived at the wharf. To which charge the counsel for the defendants excepted. The jury found a verdict for the plaintiff, on which judgment was rendered: which judgment was *affirmed* by the supreme court on writ of error, on the ground that this case was not distinguishable from those of *Hollister* v. *Nowlen*, 19 *Wendell*, 234, and *Cole* v. *Goodwin*, Id. 251. The defendants removed the record into this court by writ of error, where the case was submitted on printed arguments by:

*A. L. Jordan*, for the plaintiffs in error.

*D. Graham, Jun.*, for the defendant in error.

*Points raised and argued on the part of the plaintiffs in error:*

I. It does not appear by the record that the plaintiffs in error or their servants were notified that the defendant had any baggage on board, until it was delivered on the forged order. If the plaintiffs in error, as common carriers are considered as insurers, they should in accordance with every legal principle, be informed of the existence of the property they were bound to protect and insure.

II. The *trunk* was in fact delivered by *Pruyn*, who for that purpose was the agent of the owner, and in whose charge the trunk was left, and the defendants were exonerated.

III. The evidence is only applicable to the counts charging the defendants in the court below as common carriers.

IV. Baggage on steamboats is in the personal possession of the owners. In the cases decided respecting baggage lost from stage coaches, the baggage was secured by the

proprietors or their servants and was not in the possession of the owners.

V. The defendants, although carriers of passengers, are not responsible for the loss of their travelling or personal baggage, without negligence.

VI. The responsibility of the defendants, (if liable as common carriers,) ceased on the arrival of the steamboat and a reasonable time thereafter for the passenger to remove his trunk, according to the usual course of the business.

VII. If the defendants agreed to set a watch through the night and keep the trunk until called for in the morning, it was a new contract, and did not prolong their liability as common carriers.

VIII. This new undertaking being without reward, and solely for the passengers' benefit, was a naked bailment, and the bailee is responsible only in case of gross negligence.

IX. The judge erred in charging the jury that the defendants were liable, unless the trunk was delivered to the passenger, or had been lost by inevitable accident; of which there was no pretence.

X. The judge erred in charging that it was a question of fact for the jury to say, whether the trunk had been delivered. Upon the facts, it was a question of law, and should have been decided by the court.

The following cases and authorities were commented upon under the above points: 1 *Salkeld* 282, *and Holt* 130, *Middleton* v. *Fowler*; 9 *Wendell* 85; 2 *Wendell* 327; 13 *Wendell* 611. 2 *Kent's Commentaries* 601. 17 *Wendell* 305. 4 *Pickering's R.* 371. *Story's Treatise on Bailment* 343. 19 *Wendell* 234; *Id.* 251. *Lovell* v. *Hobbs*, 2 *Shower* 127, *and note.* *Upshaire* v. *Aidee*, *Comyn R.* 24. 4 *Bing.* 218.

*Points raised and argued on the part of the defendant in error:*

I. Steamboat proprietors are liable as common carriers, for the baggage of passengers. 2 *Kent's Comm.* 601.

*Story on Bailm.* 325.· *Upshaire* v. *Aidee,* 1 *Com. R.* 25.
*Middleton* v. *Fowler,* 1 *Salk.* 282. *Brooke* v. *Pickwick,*
4 *Bing.* 218. *Orange Co. Bank* v. *Brown,* 9 *Wend.* 114.
*Hollister* v. *Nowlen,* 19 *Wend.* 236. *Cole* v. *Goodwin,* 19
*Wend.* 251.

II. The responsibility of the plaintiffs in error as common carriers, continued until a due delivery of the goods. Whether there was such delivery, was a question of fact, depending upon the nature of the employment and the usage of the carriers as it appeared from the evidence, and was properly left to the jury. 2 *Kent's Comm.* 604. *Reab* v. *McAllister,* 8 *Wend.* 112. *Gra. Prac.* 2d ed. 324, *and cases there cited.*

III. If the trunk was delivered on a forged order, the plaintiffs in error are liable. *Story on Bailment* 365, *and cases there cited. Lubbock* v. *Inglis,* 1 *Stark. Rep.* 104. *Youle* v. *Harbottle, Peake* 49. *Devereux* v. *Barclay,* 2 *B. & Ald.* 702.

After advisement, the following opinions were delivered:

*By the* CHANCELLOR. The law appears to be well settled, at least in this state, that the owners of steamboats, railroads, canal boats, stage coaches, &c., whose ordinary business it is to carry passengers, together with their ordinary baggage, for hire or reward, are liable as common carriers for the safety of the baggage, although such carriers do not receive any compensation for the transportation of the baggage, other than that which is included in the ordinary fare which is charged for the conveyance of the passengers with their usual travelling baggage. *See Hollister* v. *Nowlen,* 19 *Wend. Rep.* 234, *and Cole* v. *Goodwin and Story, Id.* 251, *and the cases there referred to by Justices Bronson and Cowen.* It is only upon the principle that the transportation and risk of the ordinary baggage of the passenger forms a part of the service for which the fare is charged, that those decisions can be sus-

tained which give a lien upon such baggage for the unpaid fare. *See Wolf* v. *Somers*, 2 *Camp. Rep.* 631.

The salutary rule of holding such common carriers liable for losses, other than those arising from public enemies or inevitable accidents, and which is so essential to the preservation of the baggage of the otherwise unprotected traveller, against the negligences of the carriers, or the frauds of their servants, I trust will not be impaired by any decision of this court.

Nor do I find any thing in the circumstances of the present case to take it out of the general rule. It appears from the testimony, that the boat usually arrived at New-York in the night, and though the passengers usually landed with their baggage before morning, they frequently remained on board through the night. The jury, therefore, were right in concluding that the baggage left on board was in the custody of the master, in his capacity of common carrier, until it was called for at the usual time in the morning, after his arrival at his place of destination. The owners of the boat, in whose custody the trunk was, were therefore clearly liable for the misdelivery thereof to the colored man, upon the forged order, and were rightfully charged with the loss. Even in the ordinary case of a bank which pays out the money of a depositor upon a forged check, in his name, the institution and not the depositor, must sustain the loss. So too, the warehouseman, who is not liable to the same extent as the common carrier, has been held liable for delivering the goods entrusted to his care to the wrong person, where such delivery was by mistake merely and not intentionally wrong. *See Devereux* v. *Barclay*, 2 *Barn. & Ald. Rep.* 702.

For these reasons I think the decisions of the judge who tried the cause, and of the supreme court, were correct, and that the judgment should be affirmed.

By *Senator* VERPLANCK. I entirely assent to the correctness of the decision upon the main points of this case.

**1841.**

Powell
*v.*
Myers.

Our supreme court have in this, as in several former decisions, recognized and established the rule, that the responsibility of common carriers extends to the baggage of passengers or travellers by land or water, in the same manner and to the same extent, as with respect to goods transported; and this whether the baggage was separately paid for or not. The price paid by the passenger for his fare, with liberty at his discretion, to carry with him a certain amount of baggage, is in effect, a gross average sum paid for the transportation of himself and of the ordinary weight of baggage. As the baggage is thus transported by a common carrier and for a compensation, whether paid distinctly on that account or not, the general principle of this title of our law of bailment, makes him liable for all losses not arising from the act of God or the public enemy. The policy of this severe rule, founded as it is on the necessity of the case, as the only possible means to prevent fraud and collusive thefts, and to enforce strict vigilance, by thus throwing the burden of loss, no matter how explained or excused, upon the carrier, applies practically to the traveller's trunks in the great majority of cases as much as to the merchant's bales. Whatever doubt or vacillation upon this point there may have been in the earlier decisions, (as there unquestionably was,) yet the repeated decisions of our own state courts, being thus founded in principle and in conformity with public utility, ought to be sustained. I think, too, they will be found to be supported by the better, although not by the uniform, authority of the courts and books.

Another important point is presented in this case. This is, that the carrier's responsibility does not terminate by arrival at the place of destination, but continues unchanged until due delivery, unless he is otherwise before discharged of his peculiar custody as a carrier. The passenger's trunk left in the boat till a convenient and usual time of delivery is governed by the same law with the merchandize transported in the boat. Mere arrival does not discharge the

carrier's responsibility as to either. In this instance there was an erroneous delivery, and there was nothing shewing that by either usage, special contract, or the application of any legal rule to the facts, the carrier's responsibility had previously ceased. Still, upon this part of the case, I have had some little hesitation, lest, as the case stands under the very general language of the judge's direction, it might hereafter be considered as affording authority for an indefinite extension of the period of responsibility. There may unquestionably be cases where, at some time after the arrival at the place of destination, the strict responsibility of the carrier, as such, for goods or baggage remaining in his possession undelivered, without fault or neglect of his own, should cease, and he would then continue to hold them, not as a carrier, insuring against all except public and inevitable perils, but as a mere bailee in deposit, gratuitously or otherwise, according to circumstances. Such a termination of the carrier's responsibility and change of character of the deposit would be regulated by usage, the course of business, or sometimes by legal principles applied to the special facts, the acts of parties and the common understanding of the transaction. I rather think that the general legal rule governing such cases has not yet been distinctly and comprehensively laid down, either in the decisions or the text books, although the principle is to be found there. But we are not now required, or, indeed, enabled by the case to settle it here. I am only anxious that our decision, as it stands, may not be used inferentially to enlarge the already heavy responsibility of those engaged in public transportation. Taking the general direction of the charge in connection with, and as limited by the whole evidence of the case, its meaning was correct. The judge said that, "if the trunk had not been delivered to the owner, and was not lost by inevitable accident, the defendants below, remained liable, even after the boat arrived at the wharf." That liability does not terminate with arrival at the destined place, but continues till delivery, unless it be

1841.

Powell
v.
Myers.

1841.

Powell
*v.*
Myers.

shewn from the course of business, common understanding of the parties, or as a legal result from some act of the parties, or other special fact, that the carrier's responsibility was at an end. No such cause of termination of the strict liability before the erroneous delivery appearing here, the direction seems not open to exception. On another state of facts, of not uncommon occurrence, the same language might be open to objection.

I have expressed these general views merely to prevent our affirmance from unsettling or throwing doubt upon any decision exonerating carriers from their peculiar liabilities upon the natural termination of their contract, whatever that may be. I have been much impressed with the wisdom of a remark of Chief Justice Marshall, *Boyce* v. *Anderson*, 2 *Peters' R.* 155, which has been cited in this argument. "The law applicable to common carriers is one of great rigor, though to the extent to which it has been carried, and in the cases to which it has been applied, we admit its policy and necessity; but we do not think it ought to be carried further as applied to new cases."

On the question being put, *Shall this judgment be reversed?* All the members of the court present at the argument, except *Senators* DIXON, ELY and HUMPHREY, voted in the *negative;* the three named members voted in the *affirmative.* Whereupon the judgment of the supreme court was AFFIRMED.