BROWN (DUNBAR v.). See Case No. 4,129.

BROWN (ELLERY v.). See Case No. 4,383.

## Case No. 2,005.

### BROWN v. The ELVIRA HARBECK.

[Betts' Scr. Bk. 214.]

District Court, S. D. New York. April 19, 1851.[1]

SHIPPING—BILL OF LADING—LIABILITY FOR LOSS OF BAGGAGE—EVIDENCE OF LOSS—SUFFICIENCY—PRESUMPTION.

[1. The fact that owners of a vessel and her officers treated a receipt, asserted to have been given by the mate, as genuine and authentic, is sufficient evidence that the mate signed it and gave it by authority.]

[2. The receipt having gone directly into the possession of the shipper's agent, and remained there until the trial, the shipper could not object that the insertion of the words "personal baggage" in the receipt was improper, and not binding on her.]

[3. The incompetency of a witness as to the loss of goods shipped is immaterial, where the loss has been sufficiently otherwise proved.]

[4. A vessel is not liable for failure to deliver at its destination personal baggage gratuitously carried, and unaccompanied by the owner, where there is no proof of actual negligence or misconduct, or of improper delivery, on the part of the carrier.]

[1] [Reversed in The Elvira Harbeck, Case No. 4,424.]

[5. In such a case, a presumption of want of proper care or diligence does not arise from the fact of nondelivery.]

[In admiralty. Libel by Jeanette Brown against the bark Elvira Harbeck for damages for failure to deliver goods shipped (I. H. and W. H. Harbeck, claimants). Dismissed.]

BETTS, District Judge. The libellant and her family, emigrants from the Prussian provinces to the United States, sent from Aix la Chapelle, to Antwerp ten boxes and a basket, containing mechanic's tools and wearing apparel, with directions to her brother and agent to take passage to America for herself and family, and to place the goods on board the same ship. She and her family reached Antwerp before the goods arrived there, and her brother, not being able to obtain passage for her family with him on board the Elvira Harbeck, took their passages on board the ship Roscoe, to sail from the same port. The Elvira Harbeck was a passenger ship, and laden with emigrants, and it is alleged in the answer of the claimants that her entire hold was chartered for that purpose to Clive & Striker, persons engaged in the passenger business, but no proofs are given to that fact.

Clive & Striker represented to the agent of the libellant, when he paid for her passage and that of her family, that they were entitled to take baggage and effects to the amount of over one ton weight each, without paying freight therefor, and, if the baggage went in another ship, the freight then would be light,—from $1.00 to $2.50 per ton.—and they engaged, if it did not go in the Roscoe, to send it in the Elvira Harbeck. The agent proves he saw eleven packages belonging to libellant and her family delivered on board the Elvira Harbeck, and that Clive & Striker delivered to him a receipt therefor, purporting to be signed by the mate of the ship. The packages consisted of eight boxes, two trunks, and one oval basket, proved by a son of the libellant to be the same description of packages that were sent by libellant from Aix la Chapelle to Antwerp. On the arrival of the vessel in New York, that receipt was taken to the vessel, and the mate delivered eight boxes, but could find nothing of the basket and two trunks. For the loss of those and the value of their contents this action is brought. The receipt given by the mate is headed in pencil mark, "Personal baggage," and acknowledges 10 boxes received on board, and at the bottom "one small basket" is added in writing.

For the claimants it is insisted that the due execution of the receipt is not proved, nor that the person signing it was mate of the ship. But when taken to the ship and the office of the claimants in pursuit of the goods, it was acted upon as genuine and authentic by the officers of the ship and the claimants, and that, prima facie, is sufficient evidence that it was signed by the mate, and that he could rightfully give it.

For the libellant it is urged that the description in pencil mark of "personal baggage" is not to be regarded, as no proof is given that the writing was on the paper, when it was delivered by Clive & Striker at Antwerp. But the receipt went directly into possession of the agents of the libellant, and remained there and with her until produced on the hearing, and it does not now lie with her to object to the insertion of those words as improper and not binding upon her. Her act is an implied admission that they constituted a part of the receipt when originally given. The loss of the basket and two trunks is sufficiently proved without the testimony of Adolph Brown, the libellant's son, and one of the emigrant family, and it is not, therefore, necessary to consider the question raised as to his competency as a witness in the cause.

The packages were palpably received by the ship as the baggage of passengers who were to come in her. No notice was given the master or mate that the owners of the baggage had taken their passage on another ship. The ship is clearly chargeable at law, as a common carrier, for the safe delivery of the personal baggage of her passengers taken on board, and for its value in case of loss. This doctrine has been fully discussed and explicitly settled in this state in various cases (9 Wend. 85; 13 Wend. 611; 19 Wend. 234 and 251), and finally by the court of errors (Powell v. Myers, 26 Wend. 591). The liability is enforced on the carrier because of his public occupation, and because he undertakes to transport the goods for hire. In the case of the personal baggage of passengers that hire, or freight, need not be demanded or paid as a distinct compensation, but will be presumed included in the passage money charged. It was long urged to be a protection to carriers against claims for lost baggage that the carrier received no compensation for carrying it (Hawkins v. Hoffman, 6 Hill, 586); but the courts decided that the passage money paid by the passenger must be accepted as a general compensation for his transportation and that of his baggage. The like doctrine would apply to a charterer of the vessel who pays in a gross sum for the charter privilege, and that accrues against the ship as freight paid on the various parcels transmitted by the several shippers who do not ordinarily, in such case, pay freight directly to the ship. But this case cannot be placed on that footing because the agent of the libellant proves this shipment on this vessel did not go under their privilege of charterers.

When the baggage is sent without paying freight, and the passenger does not accompany it personally or by his agent, the carrier is then merely a naked bailee, and is answerable, probably, only in case of gross negligence. Boyce v. Anderson, 2 Pet. [27

U. S.] 156. Certainly for nothing more than ordinary care and diligence in respect to the transportation and safe-keeping of the property (Ang. Carr. §§ 20, 21; Tracy v. Wood [Case No. 14,130]), laying out of view the inquiry whether baggage so put on board is not evidence of a fraudulent purpose to defeat the carrier of his reward, and admitting the transaction to have been bona fide.

The case depends upon the question of law whether a ship-owner, when goods are transported in his ship without agreed compensation, direct or indirect, for their carriage, is answerable for their safe delivery upon the footing of his receipt for them alone. I think the authorities, as well as the principle governing the law of carriers, exonerates him from responsibility for the property unless the shipper proves ordinary care and diligence in their carriage and safe keeping was not exercised by the ship.

Upon the proofs as they stand before the court it is to be presumed the two trunks and basket (if put on board the ship) were stolen on the passage or on the arrival of the ship, or were taken ashore by mistake with other luggage not belonging to the libellant, and then the remaining inquiry is whether the ship is liable either in case of the felonious stealing of the property or a mistake committed in landing or delivering it. The law undoubtedly is that if a mere mandatory accepts property on an undertaking, entirely gratuitous, to deliver it to another, and omits to perform the engagement, whereby the mandator is prejudiced, an action will lie to recover the damages so sustained. Story, Bailm. § 171 c and d. So also if he do any act prejudicial to the mandator, in respect to the carriage or delivery. The burthen of proof to show misfeasance or blamable neglect of duty in the bailee lies upon the plaintiff (Ang. Carr. §§ 38–40), and the mere fact that the act agreed to be done has not been performed does not charge the bailee with culpable negligence. Accordingly it is not enough for the plaintiff to show the bailee had but detained the property entrusted to him to be carried gratuitously; he must also prove that the bailee has omitted that care and diligence which bailees without hire, of ordinary prudence, usually take of property of like nature. Tracy v. Wood [supra]. The supreme court of Massachusetts decided that a railroad company, transporting goods as a common carrier for hire, is not answerable for their loss whilst deposited in their store or warehouse gratuitously, unless a want of proper care and reasonable diligence is proved against them. Thomas v. Boston & P. R. Co., 10 Metc. [Mass.] 472. A part of the goods were taken from the store-house, and a part were lost whilst left there by the owners; and it is held the railroad was not responsible for the goods lost.

Bailees subjected to ordinary care and diligence are not answerable for goods taken away by robbers or thieves (Brind v. Dale, 8 Car. & P. 207; 34 E. C. L. 355; Story, Bailm. § 39; Ang. Carr. § 48), although the fact of loss may impose on them the necessity of giving satisfactory evidence that the goods had been stored and kept with reasonable care or ordinary diligence. This usually is a question of fact (Ang. Carr. § 51), and, so far as the court is to presume upon the fact, I shall hold on the evidence that the basket and trunks, if put on the ship, were stored away and kept there with the usual and proper care. It is accordingly incumbent on the libellant to prove that they were delivered from the ship improperly by those entrusted with her unloading. The libellant fails supplying any proof fastening actual negligence or misconduct on the ship in delivering the goods, and she is not entitled to the presumption that their loss was so occasioned, and not by being purloined.

I think upon the evidence the ship is not chargeable for the value of the two trunks and basket, and that the libel must be dismissed, with costs.

[NOTE. Reversed by the circuit court in Case No. 4,424.]