## CLENDANIEL *vs.* TUCKERMAN.

The plaintiff, being the master of a schooner, which he sailed under a contract with the owners, by which he was to find the crew and provisions and pay for half the labor, port charges, &c. and receive one half the net freight earned by the schooner, signed a bill of lading by which he agreed to deliver to the defendant a quantity of coal, shipped by the defendant's agent at Bristol, to the defendant, at Saugerties, at a stipulated sum per ton. *Held,* that an action for the freight and demurrage was properly brought in the name of the plaintiff; he being the contracting party, and having such a special property in the vessel as would enable him to collect the freight, &c.

It is a general rule that the contract of a common carrier, for the conveyance of goods, must be completely performed by the delivering of the goods at the place of destination, before freight can be demanded. Yet where a carrier, upon his arrival at the place of delivery, reported himself ready to deliver his cargo, but the consignee was not ready to receive it, and the carrier's vessel, after waiting, several days for an opportunity to discharge her cargo, was, while thus waiting, carried away by a freshet, and capsized, and her cargo lost overboard, so that it could not be delivered to the consignee; *Held,* that freight was nevertheless recoverable.  WRIGHT, J., dissented.

In such a case the carrier, having tendered a delivery of the goods, and being obliged, against his will, and without any fault or neglect on his part, to retain the possession, his contract as a carrier is performed, and he holds the goods as a mere bailee in deposit, liable only when chargeable with negligence.

A carrier, having arrived with the goods at the place of destination and offered to deliver them, the owner or consignee is bound to receive them within a reasonable time. And if he neglects to do so, the carrier may, if practicable, leave the goods in store, and thus discharge himself from all further liability.

Where there has been no special agreement between a shipper of goods and the master of a vessel, for demmurrage, if the vessel is detained an unrea-

Clendaniel v. Tuckerman.

sonable time, by the freighter or consignee, the owner of the vessel may recover damages, in the nature of demurrage, for such detention.

But, to sustain such an action, it must appear that the vessel was improperly detained.

The damages should be limited to compensation for the time the vessel was actually detained, by the consignee, beyond a reasonable time for the discharge of her cargo.

THIS was an action for freight and demurrage. It was tried before Mr. Justice Wright, without a jury, at the Ulster circuit, in April, 1852. The plaintiff was master of the schooner Pennsylvania. He sailed the vessel under a contract with the owners, by which he was to find the crew and provisions, and pay half the labor, port charges, &c. and receive half the net freight earned by the schooner. On the 11th of July, 1850, an agent of the defendant shipped on board the schooner, at Bristol, in the state of Pennsylvania, a cargo of coal, and the plaintiff signed a bill of lading, as follows : " Bristol, July 11, 1850. Shipped by J. M. Downing, agent, in good order and condition, on board the schooner Pennsylvania, whereof the undersigned is master, and now lying in the port of Bristol, and bound for Saugerties, N. Y. 130 tons (of 2240lbs.) lump coal, (including nine tons on deck,) which I promise to deliver in like order and condition, at the port of Saugerties, (the damages of the seas only excepted,) unto Joseph Tuckerman, or to his assigns, he or they paying freight for the same at the rate per ton of 2240lbs. of one and $\frac{12}{100}$ dollars." The Pennsylvania reached Saugerties on the morning of the 16th of July. Upon his arrival the plaintiff presented his bill of lading to the defendant's agent, and expressed his dissatisfaction in not being permitted to discharge his cargo ; but the defendant had but one place at which hard coal was discharged, where but one vessel could deliver at a time, and only 85 tons were discharged in a day. Several vessels were there before the plaintiff arrived, awaiting their turn to discharge. The vessel lay at the defendant's wharf, in the Esopus creek, from Tuesday, the day on which it arrived, until Saturday, when by reason of a very extraordinary freshet in the creek, it was carried away, and about 800 feet below the

wharf; was forced upon rocks and capsized, and the principal part of the coal discharged into the creek. About 16 tons were subsequently recovered, and delivered by the plaintiff to the defendant. On the day the plaintiff arrived, or the following morning, the plaintiff and the master of the other vessels then lying there applied to the defendant's agent to be allowed demurrage. The agent went to New-York to consult the defendant in relation to the claim, and, upon his return, agreed to allow to the remaining vessels demurrage at the rate of $8 per day, after the 22d of July.

The testimony being closed, the defendant's counsel moved for a nonsuit, on the following grounds: 1. That there was no evidence, or the evidence was not sufficient, to enable the plaintiff to maintain the action. 2. That the plaintiff being the mere master, was not the party entitled to bring the action for freight or demurrage. 3. That the delivery of the cargo was an essential requisite, and a condition precedent to a right to freight; and that, in this case, no delivery, either actual or constructive, had been shown. 4. That no express contract to pay demurrage had been shown, and there was nothing in the bill of lading, or the evidence, from which a contract could be implied. The judge held that the action was properly brought in the name of the plaintiff, but that the evidence failed to establish a case in which freight or demurrage was recoverable, and therefore nonsuited the plaintiff. The plaintiff appealed from the judgment entered upon this decision.

*E. Cooke*, for the plaintiff.

*H. Hogeboom*, for the defendant.

*By the Court*, HARRIS, J. The judge at the circuit was undoubtedly right in holding that the action was properly brought. The plaintiff, though not an owner, had such a special property in the vessel as enabled him to collect the freight. He was the contracting party. He, and not the owners, agreed with the defendant, through his agent, for the carrying of the

Clendaniel *v.* Tuckerman.

coal, and it does not lie with the defendant to dispute his right to receive the freight for which he stipulated, when earned.

But I cannot agree with the learned judge in holding that the evidence failed to establish a case in which freight was recoverable. I know that it is a general rule that the contract for conveyance must be completely performed, by the delivery of the goods at the place of destination, before freight can be demanded. It is as much the duty of the carrier to deliver as it is to transport the cargo. But there are cases where the readiness of a party to perform an act, with notice of such readiness, is equivalent, in legal effect, to actual performance. I think this was such a case. The plaintiff upon his arrival had reported himself ready to deliver his cargo. The defendant was not ready to receive it. If his arrangements were such as to allow but one vessel to discharge at a time, then he was in fault for having freighted so many vessels, to arrive at the same period. He had not stipulated with the plaintiff for any delay. If he could provide for several vessels, to discharge at the same time, as it seems was subsequently done, then he was in default for not having sooner made such provision. In either case, it was the neglect or default of the defendant, and not of the plaintiff, which subjected him to the delay. He was in readiness from Tuesday until Saturday morning to discharge his cargo ; and had the defendant been ready to receive it, the cargo would have been delivered before the freshet commenced. The plaintiff had no alternative but to wait the convenience or pleasure of the defendant. To say, under these circumstances, that the responsibility of the plaintiff as a carrier still continued, would be unjust, in the extreme. I know of no rule of law that requires it. Having tendered a delivery of the coal, and being obliged, against his will and without any fault or neglect on his part, to retain the possession, his contract as a carrier was performed, and he held the coal as a mere bailee in deposit, liable only when chargeable with negligence.

This view of the case is abundantly sustained by authority. In *Bradstreet* v. *Baldwin*, (11 *Mass. Rep.* 229,) an action was brought to recover the freight of a vessel which had been char-

tered for a voyage from Boston to Tobago and back. The con-
tract was to pay " $2100 in full for freight in 30 days *after the
return cargo should be discharged.*" The vessel, upon its re-
turn to Boston with the cargo, was seized for a violation of the
non-intercourse law. It was held that, if the delivery was pre-
vented by an attachment or seizure for a default of the defend-
ant, the plaintiff would be as well entitled to recover as upon
an actual discharge and delivery of the cargo. (*See also Palmer*
v. *Lorillard,* 16 *John.* 356. *Morgan* v. *Ins. Co. of North
America,* 4 *Dallas,* 455. *Powell* v. *Myers,* 26 *Wend.* 597.)
"There may unquestionably be cases," says Verplanck, senator,
in the case last cited, "where, at some time after the arrival at
the place of destination, the strict responsibility of the carrier,
as such, for goods or baggage remaining in his possession un-
delivered, without fault or neglect of his own, should cease, and
he would then continue to hold them, not as a carrier, but as a
mere bailee in deposit, gratuitously or otherwise, according to
circumstances." The same senator, whose opinions are the
ornament of the pages which record the decisions of his official
day, adds, that the general legal rule governing such cases, did
not seem, as yet, to have been distinctly and comprehensively
laid down, although the principle was to be found both in de-
cisions and text books.

Mr. Justice Platt, also, in *Ostrander* v. *Brown,* (15 *John.* 89,)
referring to this class of cases, says, "If the consignee would
not take charge of the goods, the carrier ought to have secured
them on board his vessel, or in some other place of safety, and
that would have entitled him to his freight, with all extra
charges."

The case of *Goold* v. *Chapin,* (10 *Barb.* 612,) is very much in
point. Indeed, the principle which controlled the decision of
that case must, I think, be regarded as conclusive upon the
question now under consideration. The action was against car-
riers, for the loss of goods. As in this case, the goods, so far as
the carriers were concerned, had reached their place of destina-
tion. The carriers had taken them from the barge upon which
they had been transported, and placed them upon a float lying

Clendaniel *v.* Tuckerman.

in the Albany basin, for the purpose of more convenient delivery. On Tuesday the consignees were notified that the goods were upon the float, and were requested to receive them. The notice and request were repeated on Wednesday. On Thursday, the goods not yet having been removed, the float was destroyed by fire. It was held that the liability of the carriers, as insurers of the goods, had ceased at the time of the fire, and that they held the goods as bailees in deposit merely; and, it appearing that they were destroyed without any fault of the defendants, they were not liable. Mr. Justice Johnson, in delivering the judgment of the court, has examined, in a well considered argument, the question which Senator Verplanck, in *Powell* v. *Myers*, regarded as yet unsettled by authority. "The obligation in such a case," he says, "is not all on one side; it is as much a part of the contract, that the owner or consignee shall be ready at the place of destination to receive the goods when offered, or within a reasonable time thereafter, as that the carrier shall transport and deliver them. It cannot be considered within the contemplation of the parties to such a contract, that the consignee or owner may delay receiving the goods on their arrival, to suit his own necessities or convenience, and thus continue indefinitely this extraordinary risk of the carrier." And again he says, "I think it must be implied in every contract of this nature, that if the consignee is not found, or does not immediately accept the goods when offered, the carrier may, if he so elect, keep them as bailee in deposit. His liability is not at an end entirely, but it assumes a different and less onerous character."

This, then, is the rule of law applicable to the case in hand. The plaintiff having arrived with his cargo at the place of destination and offered to deliver it, the owner or consignee was bound to receive it within a reasonable time. The owner or consignee having neglected, either from necessity or convenience, thus to receive the cargo, the plaintiff would have had the right, had it been practicable, to leave the cargo in store, and thus discharge himself from all further liability. In that case, the owner would have been liable, not only for freight,

but also for storage. But he had the right also to retain the cargo himself. In this case he had no alternative, for it appears that he could not have discharged it elsewhere than at the owner's dock, and that was preoccupied. He thus became a mere depositary of the coal, gratuitous, I admit; yet liable for want of ordinary care. His contract, as a carrier, had been performed. He was entitled to receive the stipulated compensation.

Nor can I entirely agree with my learned brother in his views upon the other branch of the case. It is true that demurrage, properly so called, is only payable when it is stipulated for in the contract of affreightment. But it is also true that when a vessel has been improperly detained by the freighter or consignee of the cargo, the owner may have a special action for the damage resulting to him from the detention. (*Abbott on Shipping*, 304. *Horn* v. *Bensusan*, 9 *Carr. & P.* 709. *Kell* v. *Anderson*, 10 *Mees. & W.* 498.) In *Evans* v. *Forster*, (1 *Barn. & Ad.* 118,) the action was brought by the master of a vessel, who alleged in his declaration that the vessel had arrived at London, the place of destination, with the goods, and that he was ready to deliver them, of which the defendant had notice, and, although a reasonable time had elapsed, the defendants had not accepted and received the goods, for which detention he claimed to recover damages. Upon the trial before Lord Tenterden the plaintiff was nonsuited, not on the ground that such an action was not maintainable, but on the ground that the master of the vessel could not maintain it. It was held that though the master might sue for the freight upon a bill of lading, yet, when the action was for detention, it could only be brought by the owner. *Brouncker* v. *Scott*, (4 *Taunt.* 1,) is to the same effect. In *Jesson* v. *Jolly*, (4 *Taunt.* 52,) the master was allowed to maintain such an action, upon the ground that it had been provided for in the bill of lading. In *Robertson* v. *Bethune*, (3 *John.* 342,) the action failed, upon the ground that there had been no detention of the vessel with which the defendant was chargeable.

There can be doubt, I think, that, when there has been no ex-

press agreement for demurrage, if the vessel is detained an unreasonable time by the freighter or consignee, the owner of the vessel may recover damages, in the nature of demurrage, for such detention. To sustain such an action, it must appear that the vessel was improperly detained. This was a question of fact to be decided upon the trial—a question, too, of no great importance in this particular case; for though the detention may have been unreasonable, the defendant could hardly be made liable for the consequential injury to the plaintiff. The damages should be limited, I am inclined to think, to compensation for the time the vessel was actually detained by the defendant beyond a reasonable time for the discharge of her cargo.

I am of opinion, therefore, that there was error at the trial, both in holding that the plaintiff was not entitled to recover for the freight until the cargo was actually delivered, and also in holding that damages could not be recovered for an unreasonable detention of the vessel. A new trial should therefore be awarded.

WRIGHT, J. dissented.