# THE HOUSTON AND GALVESTON NAVIGATION COMPANY v. FRANK DWYER.

The principle that persons engaged in the general transportation of goods for hire are responsible for all damages done them while in their charge, unless such injury be caused by the act of God or the public enemy, applies as well to common carriers by water as by land. (Paschal's Dig., Art. 452, Note 329.)

And the doctrine applies as well to external as internal navigation; to those who transport from port to port, as well as from foreign countries, except so far as the perils of the sea may be excepted by special clauses in the bill of lading.

An injury by an explosion of a steamboat-boiler is not chargeable to the act of God or the public enemy.

Clause four, section eight, of article I, of the Constitution of the United States, declares that Congress shall have power "to regulate commerce with foreign nations and among the several States." (Paschal's Annot. Const., p. 105, Notes 85–89.) This commerce among the States includes all the means by which it may be carried on, whether by free navigation of the waters, or passage over land through the States, when either becomes necessary for commercial intercourse between the States.

Whether this clause of the Constitution authorizes Congress to pass laws regulating the right and liabilities of common carriers by water, confined in their operations alone to the limits of one State, and thereby in effect to repeal the State laws upon the subject, may be well questioned; and the court intimated that Congress had no such power.

Whatever may be the power, Congress has not attempted to regulate the rights and liabilities of the proprietors of steamboats engaged in the business of common carriers.

The act of Congress was not intended to relieve the carriers from any of the duties or liabilities imposed on them by the common law, but only to give persons and property an additional security against injury and loss.

The 52d section of the act of Congress relied on reads as follows: "In all suits and actions against proprietors of steamboats, for injuries arising to persons or property from the bursting of the boiler of any steamboat, or the collapse of a flue, or other injurious escape of steam, the fact of such bursting, collapse, or injurious escape of steam shall be taken as full *prima facie* evidence, sufficient to charge the defendant, or those in his employment, with negligence, until he shall show that no negligence has been committed by him." (Brightly's Dig., p. 857.) In a suit for damages by explosion of a boiler, it is not necessary to make all the owners of the boat parties. And if there be improper joinder, the plaintiff may have judgment against those who are properly joined.

ERROR from Galveston.   The case was tried before Hon. E. A. PALMER, one of the district judges.

The suit was against the defendants, as members of the "Houston and Galveston Navigation Company." The record is voluminous, but the following facts are believed to present the points decided and necessary to a decision of the case:

The appellants were sued in the court below, with others, as partners and common carriers, for loss and damage to certain goods shipped by and for account of appellee at Galveston, on board the steamer Bayou City, and to be delivered to appellee at Houston.

The appellants and their co-defendants plead, among other things, specially, that the goods were shipped on their boat, called the Bayou City, a passenger as well as freight-vessel, propelled by steam; that under an act of Congress entitled "An act to amend an act entitled an act to provide for the better securing the lives of passengers on board of vessels propelled in whole or in part by steam, and for other purposes," made and passed August 20, 1852, the said steamboat Bayou City had been duly examined and inspected in her hull, machinery, boilers, equipment, apparatus, and furniture, by the inspectors appointed under said act, and found sufficient and proper for service; and that said steamboat was duly and properly provided and manned, with the usual and necessary officers—captain, mates, engineers, pilots, firemen, deck hands, and other necessary crew of vessels in such service; that the engineers employed upon the said boat, and in charge of the machinery and boilers thereof, and the propelling thereof by the steam-power aforesaid, were duly licensed by the board of inspectors, under said act of Congress, as such engineers, for the respective positions and rank which they held, and the duties whereof they respectively discharged; that the said appellants were compelled, under a penalty provided in and by said act of Congress, to employ and take into their ser-

vice upon their boats propelled by steam, and upon the said boat Bayou City, such engineers so licensed as aforesaid, and none others; that the loss, damage, and injury to the said goods, set forth and complained of in the petition, if any such were in fact sustained, were caused and produced by the means and through the explosion of one of the boilers of the said steamboat, which was, in truth and in fact, the result of the carelessness, negligence, or want of sufficient professional skill and capacity of the engineers employed upon the said boat, who were all duly licensed as aforesaid; *absque hoc*, that the said appellants, through the carelessness of themselves, their officers and agents, suffered the said goods to be damaged and broken, and part thereof entirely to be lost, so that only a part thereof was delivered, and the residue badly broken and injured, as is in the said petition alleged and set forth, &c.

The facts stated in this special plea were fully admitted, and the plea itself read as evidence to the jury, and also the further facts, that since the blowing up of the boat the license of the engineer had been revoked for his conduct on this occasion, and that he had been discharged by the navigation company.

The judge charged the jury against the defense made by the plea, stating that if, on account of the carelessness, negligence, or want of sufficient professional skill and capacity of any of the officers or engineers employed on said steamboat, an explosion took place on said steamboat, whereby the goods, &c., so shipped were damaged and injured, and a portion of them entirely lost, they (the jury) will find for the plaintiff the value of the goods so lost," &c.; "that the fact of the engineers upon the boat being licensed, and that defendants are prohibited by an act of Congress from employing any other than licensed engineers, does not hold them harmless against the carelessness, or negligence, or want of skill on the part of an engineer in their employ."

The jury having found for the plaintiff below, and as-

sessed his damages at $580, appellants moved for a new trial, on the ground of misdirection of the judge below in respect to the special plea of defendants, contained in their answer filed; which motion was overruled.

*L. A. Thompson*, for plaintiff in error.—The position assumed in this special plea is founded on the general principle of reason and justice, that no one should be chargeable with the acts of another who is not an agent of his own choice and election. The engineers were not in fact the servants of the appellants, and the maxim *qui facit per alium, facit per se*, does not apply. It was not optional with appellants who they should or should not employ as engineer; but they were bound to employ such, and such only, as had been licensed by the board of inspectors under the act of Congress referred to. No discretion is left by that act to the owners of vessels propelled, in whole or in part, by steam-power; but the Congress of the United States has undertaken to take care of the interests of the public in this particular. The steamer Bayou City, as alleged in the plea, was a passenger-boat, as well as one of burden, which brought her within the provisions of the act of Congress. This fact, it is alleged in the plea and admitted, was well known to the defendant in error.

Such is the rule as to pilots. In a case of collision, it being compulsory upon the master and owners to take the pilot by whose fault the injury was done, the owners held not to be responsible. This, says Dr. Lushington, is a great principle of justice and equity. (The Maria, 1 W. Rob. Adm., 95–111; The Agricola, 2 W. Rob. Adm., 10–21; Caruthers v. Sydebotham, 4 M. & Sel., 77.)

The same principle is recognized in the courts of the United States. (The Carolus, 2 Curtis, 69.)

This principle is not confined to maritime cases, but extends to other cases. As in Milligan v. Wedge, where the buyer of a bullock employed a licensed drover to drive

it from Smithfield. By the by-laws of London no one but a licensed drover could be so employed. The drover employed a boy, through whose negligence mischief was done by the bullock: Held, that the owner was not liable, the boy not being his servant. Held, also, that the owner would not have been liable if the drover himself had been driving at the time of the injury. (12 Adolph & Ellis, 737; 40 Eng. Com. Law, 179; Quarman v. Bennet, 6 M. & Wel., 499; Rapson v. Curbitt, 9 M. & Wel., 710.)

The court erred in allowing plaintiff below to discontinue as to Joseph Osterman, who was served with process and answered the suit. (Sayles' Prac., § 458, and authorities cited.)

The action being joint against all the defendants named in the petition and served with process, and the verdict of the jury being in favor of some of the defendants below, John Nagle, Joseph Osterman, George Ball, John H. Hutchings, and John Seely, the judgment should have been for all the defendants below. (1 Chit. Plead., 50, 51.)

*Wm. P. Hamblin & J. W. Henderson*, for defendant in error.—The demurrer in this case was waived. (Mimms v. Mitchell, 1 Tex., 449; Jones v. Black, 1 Tex., 527.)

There is no merit in the special plea in bar, and the instructions of the court are correct. The appellants were common carriers, and responsible for every loss, except such as arise from the act of God, the public enemy, or the fault of the party injured. (Story on Bail.; Chevallier v. Strahan, 2 Tex., 122; Philleo v. Sandford, 17 Tex., 230; Arnold v. Jones, Austin T., December 22, 1862,) [26 Tex., 335.]

The fact of having a license does not limit their liability, but is intended for the further protection of life and property.

There is no force in the third and fourth assignments.

Parties improperly joined can be dismissed at any time. (Johnson v. Davis, 7 Tex., 175.)

Osterman disclaimed, and the plaintiff had the right to accept his disclaimer, and dismiss.

SMITH, J.—The appellants are sued as common carriers, engaged in the transportation of merchandise and passengers by steamboats, and otherwise, between the cities of Galveston and Houston, under the firm-name and style of "The Houston & Galveston Navigation Company," and are charged with having received of the appellee, at Galveston, a lot of merchandise for transportation, to be delivered to him, in good order, at Houston; that while in their charge the merchandise was greatly damaged, to the loss and injury of the plaintiff below, and this suit is brought to recover that loss.

The defendants plead the general denial, and also that the merchandise was carried upon a vessel propelled by steam, known as the "Bayou City," used by the defendants in carrying passengers and merchandise, &c.; that under an act of Congress of the United States, passed 30th August, 1852, for this purpose, the boat and all appendant had been duly inspected and examined, and found sufficient and proper for service; that the boat was duly manned with the proper officers and crew; that the engineer employed upon the boat, and in charge of the machinery and boilers thereof, was duly licensed by the board of inspectors, under said act of Congress; that the defendants were compelled, under penalties provided in said act, to employ upon their boat such licensed engineer and none other; that the loss complained of was caused by the neglect or want of skill and capacity of the engineer thus employed, and for which the defendants should not be held liable. The injury was caused to the merchandise from an explosion of a boiler of the vessel. The facts set forth in this plea were admitted by the plaintiffs below. Verdict and

judgment were rendered in favor of the appellee, and the appellants bring the cause here for revision.

The doctrine, that persons engaged in transportation of the goods of all persons for hire are responsible for all damage done them while in their charge, unless by the act of God or public enemy, applies as well to common carriers by water as by land. (26 Wend., 591; 15 Con., 539; 3 Stew. & Port., 136; 11 Ohio, 303; 8 Hump., 497.)

This doctrine, which holds persons who may be transporting goods by water liable, applies as well to external as to internal navigation: one who transports from port to port, coastwise, or to foreign countries, (11 Pick., 41; 12 Con., 410,) except so far as the perils of the sea may be excepted by special terms in the bill of lading. (10 Johns., 1; 21 Wend., 190.)

The injury done the goods in this instance was by an explosion of a boiler of the boat. This could not be pretended to be the act of God or a public enemy, or a *vis major*, and the defendants must be held liable for the injury done, unless, as contended by them, they are relieved from the responsibility resting upon them as common carriers by the act of Congress referred to above. The bill of lading contains no exceptions from liability on account of the dangers of the sea or any other cause.

Article 4, section 5, of the Constitution of the United States, gives "Congress the power to regulate commerce with foreign nations and among the several States, and with the Indian tribes," which has been adjudicated to mean, intercourse with these nations and among the States for the purpose of trade, and includes all the means by which it may be carried on, whether by the free navigation of the waters or the passage over land through the States, when either becomes necessary for the commercial intercourse between the States. (18 How., 421; 4 Wash. C. C., 378; 15 Peters, 504.)

Whether this clause of the Constitution of the United

States authorizes Congress to pass laws regulating the rights and liabilities of common carriers by water confined in their operations alone to the limits of one State, and thereby, in effect, to repeal the State laws upon the subject, may well be questioned. Can the rights and liabilities of common carriers of merchandise by water, from Galveston to Houston, be subject to congressional legislation, when their rights and liabilities are in no way connected with foreign commerce, or of that among the States? (2 Pet., 251; 14 How., 568.) If Congress has this power, why cannot it also make rules and regulations for transportation by the railroad between those points, and also any other railroad in the State, or any other means of transporting merchandise? But, be that as it may, we are of opinion, that Congress has not, in the above-recited act, attempted to regulate the rights and liabilities of the proprietors of steamboats engaged in the business of a common carrier. If the act be at all applicable to a vessel propelled by steam, engaged in the internal trade of this State, and not coastwise, we are of opinion it was not intended to release the carrier from any of the duties or liabilities attached to him by the common law, but that it was intended to give persons and property an additional security against injury and loss, that had in so many instances been caused by the use of imperfect and insecure boats and machinery, and unskillful and careless engineers, and has wisely made it a punishable offense to use a boat in transportation of freight, or to employ an engineer who has not been licensed by the board of inspectors, and thus officially indorsed for skill and trustworthiness. It is no answer to say that the defendants could employ no engineer without license; they could have selected among those who were licensed, and should not select one who could not obtain license.

It is evident that proprietors of steamboats cannot be exonerated from liability for losses caused by the neglect of any employee on the boat by the said act of Congress.

The 52d section of this act (Brightly's Dig., p. 857) reads as follows: "In all suits and actions against proprietors of steamboats, for injuries arising to persons or property, from the bursting of the boiler of any steamboat, or the collapse of a flue, or other injurious escape of steam, the fact of such bursting, collapse, or injurious escape of steam shall be taken as full *prima facie* evidence, sufficient to charge the defendant, or those in his employment, with negligence, until he shall show that no negligence has been committed by him or those in his employment."

A verdict was rendered in favor of several who had been sued as members of the company, and it is here contended, that the plaintiff had no legal right to a judgment against any of the defendants, unless he obtained it against all that had been sued, and for this reason judgment should have been rendered in their favor. This is believed to have been the common-law rule of practice. That system of practice has not been adopted in this State, and ours assimilates more to the chancery practice, and we are of opinion that the rule in this State is different. (Shipman v. Allee,) [*ante*, p. 17,] decided at this term. The plaintiff could have dismissed as to these defendants, and we see no good reason why a verdict and judgment may not be rendered in their favor. We are unable to see that the other defendants have been, or how they could have been, deprived of any valid defense against the cause of action by the verdict and judgment in favor of their co-defendants.

There is no error in the proceeding below, and the judgment is

AFFIRMED.