PARKER GORDON CIGAR COMPANY, Respondent, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, November 1, 1915.

1. **CARRIERS OF GOODS: Delivery: Transfer Company: Teamster: Identification.** A transfer company was the agent of merchants in a city to receive merchandise shipped over railway carriers to such merchants as consignees. To protect the railway carrier from delivering to an impostor pretending to be a teamster of the transfer company, it was agreed that the transfer company in order to identify that teamster, would have the name of one of its officers endorsed on the blank receipt sheet which the teamster carried, and which, upon delivery, was to be signed by the consignee. One of the transfer company's team-

Parker Gordon Cigar Co. v. Chicago, R. I. & P. Ry. Co.

sters, was ordered to go after the plaintiff's goods and deliver them and was given a receipt sheet with the name of an officer endorsed thereon by an unauthorized employee. He presented this receipt sheet at the railroad freight office and received the goods, but never delivered them to the consignee. It was *held,* that there was a delivery to the transfer company notwithstanding the receipt sheet was not properly endorsed.

2. **DELIVERY: Identification: Teamster.** If goods are delivered by a railway carrier to the servant of a transfer company who had been ordered to go after them, it is of no consequence that the railway company did not have the man identified as being the servant of the transfer company.

3. **CARRIER: Freight: Delivery.** It is not only the duty of a railway carrier to safely carry freight to destination, but it must also safely deliver to the consignee.

Appeal from Buchanan Circuit Court.—*Hon. Wm. H. Haynes,* Judge.

REVERSED.

*Dolman & Shultz* for appellant.

*Spencer & Landis* for respondent.

ELLISON, P. J.—This is an action to recover the value of goods received at Chicago by defendant, a common carrier, for transportation to Kansas City and for delivery there to plaintiff, the consignee and owner. The petition states "there was delivered to defendant for plaintiff . . . four cases of cigars containing 22,500 cigars which said cigars the defendant agreed in consideration of certain freight charges paid it, well and safely to carry from Chicago, Illinois, to Kansas City, Missouri, and at the latter place to deliver the same to plaintiff, or its agent, but . . . defendant in violation of its said agreement and in total disregard of its duty as a common carrier for hire failed and neglected to deliver said cigars . . . to plaintiff, or to anyone for plaintiff, and that the same have been wholly lost to plaintiff." The prayer

is for judgment for $1575, the alleged value of the goods. The answer admits that defendant received the cigars for transportation and delivery to plaintiff at Kansas City and alleges delivery to an authorized agent of plaintiff.

The sole issue in the case is whether there was a delivery of the goods to plaintiff, their consignee and owner. The trial of that issue in the circuit court resulted in a verdict and judgment for plaintiff. Defendant appealed. It is conceded defendant delivered the goods at its depot in Kansas City to a negro teamster employed by the Kansas City Transfer company which had general authority from plaintiff, a wholesale grocer, to receive all shipments of goods arriving at Kansas City for plaintiff. The teamster loaded the goods in the wagon of his employer, of which he was the driver, but instead of delivering them to plaintiff he sold them for $100, returned the team and wagon to the barn of the Transfer Company and then absconded.

The mode of doing business between the railroad companies, including defendant, and the transfer company as agent for a large number of merchants receiving shipments was this: To protect the railroad companies from imposition by persons pretending to be sent after freight by the transfer company, it was agreed between them that none of the railroad companies would deliver freight to a teamster unless there was found signed or endorsed on his "freight sheet," the name of either of four named officers of the transfer company, viz., the president, the bookkeeper, the superintendent or the dock foreman. This sheet was perhaps eighteen inches long so as to accommodate items of freight and it is variously designated by the witnesses—some called it a card, some a freight card, some a sheet and others an identification sheet, or card. A copy of one is in the record and we find that it is really a blank receipt to be signed by the consignee. It

is gotten up by the transfer company and carried by its teamsters; each sheet having a blank space for the teamster's name following the word "Teamster" at the top. Then came the words "Received from the Kansas City Transfer Company, the following articles in good order and condition." Then followed blank columns for name of railroad, consignee, articles of freight, weight and charges. This sheet, or card, was carried by the teamster to the railroad office where, if not already done, it would be filled out with items of freight, the freight loaded by the teamster and taken to the consignee, who would verify, sign and hand back to the teamster, who would return it to the transfer company. Now it was this sheet receipt that one of the officers above named would endorse with his name, generally in one corner, before it was handed to a teamster by the dock foreman, or his assistant when directing him to go after freight. The railroad delivery official had the signatures of these officers in his desk for comparison if he thought it necessary.

On the day when the freight in controversy was delivered by defendant, the transfer company's assistant dock foreman handed one of these sheets to one of the transfer company's teamsters with the latter's name written in at the proper place, but seeing that it had not the endorsement of either of these officers, he, as he had sometimes done before, mistakenly thinking he had authority, wrote the name of the transfer company's cashier on the sheet. The teamster took it to defendant's freight office and there the proper railroad officer without attempting to verify the transfer officer's signature, ordered plaintiff's goods delivered to the teamster, who, as we have said, sold them and never delivered to plaintiff.

From the foregoing it will be seen that defendant delivered the goods to the transfer company's teamster whom that company had sent after them. The only irregularity, if it may be called such, was in delivering

to a teamster who was not identified. But we think plaintiff has received a service out of this to which it was not entitled. Of course it was the duty of this defendant, as a carrier, to safely deliver at destination to the consignee (Bartlett v. Steamboat, 32 Mo. 256; Buddy v. Railroad, 20 Mo. App. 220; Express Co. v. Milk, 73 Ill. 224; Powell v. Meyers, 26 Wend. 591), but the object of the railway company, as applied to this case, was to protect itself against an impostor getting the goods and thereby rendering it liable for delivering to the wrong party. The railway's position may be likened, by way of illustration, to a bank in paying a draft or check.

The bank must pay, at its peril, to the proper person. Prudence suggests that it do not pay until it has required the party presenting the check to identify himself. But though the bank is imprudent enough not to require identification, yet if the party is the right person, no harm has resulted to the bank from its incautious act. In National Bank v. Schley, 58 Georgia, 370, it is said that: "If a person withdraw from a bank a special deposit, in pursuance of authority conferred upon him by the depositor, the bank is discharged, though the authority be unknown, at the time, to the corporation or to the officer representing it in the transaction." And in Dobie on Bailments and Carriers, sec. 19, it is stated that, "Of course the bailee is not liable when he delivers goods to the right person, though the delivery is made on insufficient, or even false evidence." Here the face of the record shows, as we have stated, that the negro was the transfer company's teamster who was directed to go to defendant's freight office for the goods. In obedience to that direction he went. As he was the right man he did not need identification. Identification would not have prevented him from stealing the goods just as he did steal them. Plaintiff is making use of this identification card just as it would, had some impostor gone to de-

fendant and falsely represented that he was the transfer company's teamster sent after the goods.

The matter of identification was for the protection of the railroad companies. The transfer company's president testified that "The railroad companies, for their own protection, had the transfer companies to meet with the local freight agents and made an agreement by which they could be protected, and not make wrong deliveries." And that agreement was that no deliveries would be made without the signature of some official on the "teamsters sheet." But it would make no difference if we concede that the agreement had also for its object the protection of the transfer company for the reason that it might have had some teamsters in its employ whom it did not wish to trust with hauling freight to consignees and that on that account, it wanted freight delivered only to such teamsters as carried a freight sheet endorsed by one of its officers. For here the teamster was a freight teamster, employed to haul and deliver freight to consignees, and *who, in this instance, was sent by the transfer company after the freight in controversy*. No other conclusion can be reached than that he was sent by the dock foreman and his assistant, and that was the act of the company. Suppose the president of the transfer company had given the teamster this sheet, even without a pretense of being endorsed, and sent him for plaintiff's goods, it would seem folly to suggest that he should have been identified by defendant's freight agent. The act of the dock foreman was just as completely the act of the company as would have been the act of the president. Plaintiff's whole case is based upon a failure to identify a man as being the transfer company's teamster, when in fact, it is admitted he was such teamster.

We think the judgment should be reversed. *Trimble, J.,* concurs. *Johnson, J.,* dissenting.