## Washburn *vs.* Jones.

Where an agreement was made between the owner of a horse, and an innkeeper, by which the latter was to entertain the man having charge of the horse, one day in each week, or whenever he should call with such horse; to allow the horse to be kept in a particular stall in his stable, and to furnish provender for him; the man having charge of the horse, to take care of him exclusively, and in pursuance of such agreement the horse was put in the stall, and there received an injury; *Held*, that the case was one of innkeeper and guest; the horse being *infra hospitium*, within the meaning of the legal rule on the subject; and that the innkeeper was liable for all losses and damages happening even without his default, excepting such as were caused by inevitable accident or the public enemy.

APPEAL from the county court of Ontario county. Washburn sued Jones before a justice of the peace, for an injury to his horse in Jones' stable, Jones being an inn or tavern keeper at the time, and recovered a judgment for $71,50, together with costs. Jones appealed to the county court, where the judgment was reversed. This appeal was from the judgment of the county court, reversing the judgment of the justice.

*E. G. Lapham*, for the appellant.

*A. Worden*, for the respondent.

*By the Court*, WELLES, J. It was proved, upon the trial, that the horse injured was a stallion, which was kept by Washburn previous to the injury, during the spring of 1848, for a seed horse. That he had several stations in the town of Bristol where mares were brought to him. That one of those stations was at Jones', which was visited once a week, and that Jones was an innkeeper in said town. The man who attended the horse usually staid all night at Jones' when he stopped there, and Washburn paid Jones for entertaining the man and for keeping the horse on such occasions. The horse and his groom had been stopping at Jones' in that way for about a month when the injury happened. When Washburn went to see Jones before or about the commencement of the season, to make arrangements

with him for keeping the groom and horse when he stopped there in his circuit round to the different stations, Jones remarked that he had a stud stable, and opened the door and showed the groom where it was, being the stall where the horse afterwards got hurt. It was called a stud stall or box stall for stallions. The horse was taken care of by the groom in Washburn's employment, and fed from Jones' hay and oats. The oats was usually got for him by Jones' son. At night he was locked up in the stall, by the groom, whose practice was to carry the key to Jones' house after locking the stable. No one had any charge or care of the horse but the groom. It was claimed by the appellant that the stall was insecure, and that in consequence thereof the injury happened to the horse, by his getting his leg caught in the stall, and trying to extricate it therefrom. The injury happened in the night, in the first week in May, 1848. Evidence was given tending to show that the horse was peaceable and quiet, and that the stall was improperly constructed. Evidence was also given with a view to show that the stall in question was sufficiently secure.

I incline to the opinion that the innkeeper in this case was liable to the owner of the horse for the injury which happened to him, especially if it was caused by the defect of the stall. I am not entirely clear that the horse could be regarded *infra hospitium*—within the inn—though I incline to the opinion that it should be so considered. I think the case an extremely close one, and have great difficulty in placing it in the proper class. The difficulty lies in determining whether it is a case of goods within the inn, or a leasing of the stable or stall in question. The liability of the landlord or innkeeper, if any, rests upon entirely different principles in the one case from what it does in the other.

I think this was not a leasing of the stall, because no rent was to be paid for it as such, nor does it appear that the owner of the horse had any exclusive possession of it, so as to constitute him a tenant. The substance of the agreement was that the innkeeper was to entertain the man in the care of the horse, to allow the horse to be kept in the stall in question, and furnish

Washburn *v.* Jones.

provender for the horse, the man in charge of the horse to take care of him exclusively. When he called at this inn in his trips around at the different stations where the horse stood, the innkeeper was bound, as well under the agreement as aside from it, by the duties and obligations growing out of his character as innkeeper, to furnish entertainment for the man, and stable room and provender for the horse. I do not perceive that the agreement superadded any thing to his legal obligations, unless it might be to give him the particular stall in question, instead of some other. That would not be sufficient, it seems to me, to constitute the appellant a tenant, as distinguished from a guest. The horse occupied the stall in question only one day in a week at most, and the respondent would clearly have the right to appropriate it during the rest of the time in any way he might think proper.

I am constrained, therefore, to assume, though with some hesitation I admit, that the case is one of an innkeeper and guest, and the horse in question *infra hospitium*, within the meaning of the legal rule on the subject. Some of the authorities bearing on this question, are *Story on Bail.* §§ 470, 471, 472, 475 *to* 480 *inclusive ; Calye's case*, (8 *Co. Rep.* 63 ;) *Burgess* v. *Clemens*, (4 *Maule & Selw.* 306 ;) *Parsons* v. *Gingell*, (4 *Man. Gr. & Sc.* 545;) *Grinnell* v. *Cook*, (3 *Hill*, 485.)

If such was the relation of the parties, the respondent was bound to answer for all losses and damages happening even without his default, excepting such as were caused by inevitable accident or the public enemy. (2 *Kent's Com.* 3d ed. 594.)

If the loss was occasioned by the fraud, carelessness, or culpable neglect of the guest or his servants, the innkeeper would undoubtedly be exonerated.

The question of the sufficiency of the stall, in the case at bar, together with those relating to the disposition, character and habits of the horse, the conduct of the groom and the amount of damages, were all questions of fact for the justice to decide, and upon which evidence was given at the trial. The finding of the justice upon those questions I think should not be disturbed.

Upon the whole I am of the opinion that the judgment of the county court should be reversed, and that of the justice affirmed.

Judgment accordingly.

[MONROE GENERAL TERM, September 2, 1851.  *Welles, Selden* and *Johnson,* Justices.]