HULETT *vs.* SWIFT, executor &c.

The liability of an innkeeper is of the same stringent character as is that of a common carrier; that is to say, both are deemed to be *insurers* of the property delivered to them, with a consequent liability for loss and damage happening to it while in their possession; except when such loss or damage is occasioned by the act of God, or the public enemy, or through the fault of the owner.

Accordingly *held,* that an innkeeper was liable for property of a guest, destroyed by *fire,* while in the barn attached to the inn.

ACTION to recover the value of a horse, wagon, harness and goods destroyed by fire, while in the care and custody of the defendant's testator, as an innkeeper. The complaint alleged that Isaac I. Balding, the defendant's testator, was an innkeeper, and, as such, had and kept a common inn, in the city of Poughkeepsie, known as the "Balding House;" and that on or about the 25th day of July, A. D. 1860, one Alonzo I. Banks, the servant of the plaintiffs, together with a large quantity of goods, consisting of mittens and gloves of the value of $912, with which the said Banks was traveling as the servant of said plaintiffs, and which was the property of the plaintiffs, was received by the said Bald-

Hulett *v.* Swift.

ing into his said inn as a traveler, and as a guest therein, and the said goods and property were put into the charge and custody of said Balding as such innkeeper, within his inn, and were so received by him. That the said Balding and his servants, while the property was in said inn as aforesaid, and while Banks so remained at said inn as such traveler and guest, negligently and lawlessly conducted themselves in the care and management of the said inn and of the said property, and thereby the said property was entirely destroyed and consumed by fire on or about the day aforesaid, and thereby the goods were wholly lost to the plaintiffs, to their damage of $912. The complaint then alleged the death of Balding, on the 20th of January, 1861, leaving a will by which the defendant was appointed executor; the proof of the will; and that the defendant had qualified, and taken upon himself the duties of executor. The answer put in issue the allegations of the complaint. The action was referred to S. W. Jackson, Esq. as referee, to hear, try and determine the same. The referee, having heard and duly considered the evidence, made his report, in which he found as facts: 1st. That it was not shown upon the trial what was the cause or origin of the fire by which the property of the plaintiffs, and Alonzo I. Banks, mentioned in the complaint, was destroyed and injured on the morning of the 26th day of July, 1860. 2d. That the defendant failed to show that the said loss and injury of the property of the plaintiffs and Alonzo I. Banks was not caused by neglect or carelessness of Isaac I. Balding, the defendant's testator, or that of some of his servants or guests at his inn. 3d. That the value of the said property so destroyed, together with the damage to that so injured, was the sum of $1250.50, and that the interest thereon from the 26th day of July, 1860, to the date of his report, was the sum of $248. And he found, as a conclusion of law, that the plaintiffs were entitled to recover, of the defendant as such executor, the sum of $1498.50, together with the costs of the action. The referee states, in his opinion, that

the property in question had been deposited in the barn attached to the inn by the direction of Balding, and was in his charge as such innkeeper. That a part of the property belonged to the plaintiff and the remainder to Banks, who, prior to the commencement of this action, assigned to the plaintiff his claim for the property destroyed. That it was shown on the part of the defendant that ordinary care and diligence, for the safe keeping of the property in question, was maintained by Balding and his servants up to about 9 P. M., when the barn was locked by the ostler, and the keys hung in the hall in the inn. The fire occurred at about 2 o'clock in the morning, and when first discovered was mostly confined to the hay loft and roof. It was not shown how or by what means the fire originated. That the ostler locked the barn at about 9 o'clock, and the outer gate of the yard at about 10 o'clock of the evening before. All the facts in evidence in relation to Balding's customs and requirements in regard to the barn, and to what actually occurred at and about the barn up to the time of the locking of the outer gate, were perfectly consistent with proper care and caution.

Judgment being entered in favor of the plaintiffs, upon the report of the referee, at a special term, the defendant appealed.

*Thompson & Weeks,* for the appellant. I. No recovery can be had in such case as the present, unless upon the principle that an innkeeper is an absolute insurer of all goods entrusted to his care, and, like a common carrier, must respond for their loss unless excused by the act of God or the public enemy. It is said in *Anthon's Law Student,* 59, "Destruction of property by an accidental fire, earthquake or tempest, or the like, would probably fall within the '*fatale damnum*' of the civil law, for which an innkeeper would not be chargeable." This same exception of inevitable casualty is recognized by *Story on Bailment,* § 472. In the case of innkeepers, he says: "But innkeepers are not responsible to the

Hulett *v.* Swift.

same extent as common carriers. The loss of goods at an inn, will be presumptive evidence of negligence, but he may repel this presumption by showing he was guilty of no negligence or that it was occasioned, 1. By the personal negligence of the guest; 2. Inevitable casualty; or 3. Superior force." The firing a building by an incendiary is clearly an inevitable casualty in this sense, and not attributable to the negligence of the innkeeper. In the case of *Morewood* v. *Pollock*, (18 *L. & Eq. R.*) in regard to the liability of a ship owner, under a statute, it is said in a note, "The liability for loss by fire, not occasioned through defendant's neligence, does not attach to a warehouseman. (*Garside* v. *The Western Navigation Co.*, 4 *Term R.* 581, *decided* 1792.*") Nor to innkeepers. (*Merritt* v. *Claghorn*, 23 *Verm. Rep.* 177,) an excellent case on this subject." In the case first referred to, of a warehouseman, Lord Kenyon said : The case of common carriers stands upon peculiar grounds, (whether well or ill taken to prevent fraud.) I do not see how we can couple the character of carrier with warehouseman, in which defendants are not liable, not having been guilty of laches. In the second case, the same rule is applied to a loss by fire in the case of an innkeeper, and the facts are identical with this case. "On the trial it was conceded that the defendant was the keeper of an inn at Castleton, and that in January, 1850, the agent of the plaintiff was received as a guest at the defendant's inn, with the property described in the declaration belonging to the plaintiff, and that the horses and other property were, as usual in such cases, put into the barn of the defendant, which was a part of the premises ; and at the usual time for closing the stable the barn was locked by the defendant, and that about daylight the next morning, and while the property was in the custody of the defendant as an innkeeper, the barn was discovered to be on fire, 'supposed to be the work of an incendiary,' and the horses and other property were burned and destroyed ; and that there was no negligence in point of fact, in the defendant or his servants in the

care of the barn and of the property in question.   Testimony was given to the jury in regard to the value of the property destroyed ; damages assessed at $166.66, subject to the opinion of the court, &c.   The court, on motion, set aside the verdict.   The opinion of the court delivered by Redfield, J. says : "This is an action against the defendant as a common innkeeper for the loss of the plaintiff's team while a guest at the defendant's house, by the burning of his barn supposed to be the work of an incendiary.   The court finds that the plaintiff's loss was without any negligence in point of fact, in the defendant or his servants.   From this we are to understand that no degree of diligence on the part of the defendant could have prevented the loss.   If then he is liable, it must be for a loss happening by a cause beyond his control.   In saying this, we have reference only to the highest degree of what would be esteemed reasonable diligence under the circumstances known to exist before the fire occurred. We are aware that it would doubtless be possible by human means to have so vigilantly guarded these buildings as probably to have prevented the fire.   But such extreme caution in remote country towns is not expected, and if practiced as a general thing must very considerably increase charges upon guests, which they would not wish to incur ordinarily for the remote and possible advantage which might accrue to them." It will be seen here that the rule laid down by Sir. Wm. Jones, (to be adverted to presently,) to wit, that an innkeeper is liable only in case he fails to exercise the highest reasonable diligence in the care and protection of the property of the guest, is adhered to ; and in fact a careful review of the decided cases will show that innkeepers were never held to a stricter rule, except in the case of theft or private robbery.   The same rule is recognized in 33 *Barb*. 241, where a bailee for hire was held not liable to return property destroyed by a fire without negligence on his part.   So in *Coggs* v. *Bernard*, (*Smith's Lead. Cases*, 33 *Law Library*, *p.* 186,) it is said it is right to say, as was decided in *Moore* v. *The Mayor of*

*Mobile,* (1 *Stewart,* 284,) that a paid agent is liable if negligent, and not liable if not negligent. In most of the decided cases, the question has been on whom the onus was thrown to show negligence, or the opposite; but it is now the established rule that the defendant must show he was not guilty of negligence, being *prima facie* liable on showing the loss of the goods while in his custody. There is no case in which it has been held that the liability of an innkeeper was commensurate with that of a common carrier, but the contrary is expressly held by Story, § 472, and the case above cited decided by Lord Kenyon. Indeed the analogies between the liability of an innkeeper and warehouseman are much more perfect. It is true in the case of *Ingalsbee* v. *Wood,* (36 *Barb.* 459,) Judge Potter says: "The liability of an innkeeper to his guest, like that of a common carrier to his employer, is not discharged by showing that the fire was owing to no fault of his, but to an accident, citing the case of *Hyde* v. *The Trent Navigation Co.,* (5 *T. R.* 389.) The difficulty with this doctrine is two-fold: (1.) The question was whether the plaintiff was a guest, and not what was an innkeeper's liability, provided he had been. It is, therefore, not a point decided even in that case. And (2.) The reference is incorrect, and does not support the doctrine of the learned judge. The sole question in that case was whether the defendants were to be held as common carriers, or whether having stowed the goods in a warehouse before delivery, were exonerated. It was held on all the facts that the defendants were still liable as common carriers for the goods consumed by fire; a doctrine never doubted since Lord Kenyon's day. But no question of the liability of an innkeeper was ever mooted or raised in that case, and could not be upon the facts. So when the cases speak of an innkeeper's liability being like that of a common carrier, it is sometimes in reference to a lien sought to be enforced, when it would be as correct, and more so, to say it is like that of a warehouseman or any other person having a lien. Having a lien on goods or

articles, by no means makes one an insurer absolutely of such goods. In some cases it means that both are *prima facie* liable, without intending to assert that no diligence or accident will exonerate an innkeeper from such liability, which would not also exonerate a common carrier. Sir Wm. Jones, in his *Treatise on Bailments*, says, (*p.* 5,) "As the bounds of justice would in most cases be transgressed, if he, the bailee, was made answerable for the loss without his fault, he can only be obliged to keep it with a degree of care proportioned to the nature of the bailment." He then discusses and defines the care required in each species of bailment, showing that by the Roman law it was comprised under two heads, Deceit and Neglect; and classing neglect under the English law into three divisions, 1st. Gross, or *lata culpa;* 2d. Ordinary, or *levis culpa;* 3d. Slight, or *levissima culpa;* and applies the second, ordinary care, to all bailments where they are reciprocally beneficial to both parties; such prudent care as every prudent man commonly takes of his own goods." (*Page* 23.) He also vindicates the same rule as laid down by *Pothier on Obligations,* and at page 49 he says: "When a bailee either directly receives or demands a reward for his care to take charge of goods in consequence of some contract, he becomes answerable for ordinary neglect, citing the case of 'a trunk left with an innkeeper or his servants,' and thus placing innkeepers in this class of bailees, and showing at page 96 that the ground of holding an innkeeper liable is his 'neglect to provide honest servants and honest inmates,' where property is stolen belonging to guests, and refers to a law of the Roman Prætor which excepted him from liability in cases of *damna fatali,* or inevitable accident; and says, in all such cases it is competent for the innkeeper to repel the presumption of his knavery or default by proving that he took ordinary care, or that the force occasioning the damage was irresistible." I have thus referred to the treatise of Sir Wm. Jones, because it has been claimed that, by the rules of the common law, an innkeeper can exonerate himself from respon-

Hulett *v.* Swift.

sibility for loss only by two modes, the act of God and the public enemy. It will be seen that this is clearly fallacious. That he is not an absolute insurer like a common carrier, while the goods are in transit, but responsible only for the best care he could bestow upon the goods, so that, if without negligence, he is not liable. So that the common rule is clear: Where goods in the custody of an innkeeper are lost by robbery, the mode of the loss is proof of negligence, and cannot be rebutted; but where they are burned by an incendiary, or carried off by a flood, a superior force, or a foreign army, or other inevitable accident or casualty, in all such cases, proof that it was not owing to neglect, exonerates the bailee, and he is not responsible. The course of modern authority is to the same effect. I have cited the case in Vermont, of *Merritt* v. *Claghorn,* directly in point, approved by law and equity reports as good law, and analogous principles laid down in other cases to the same effect. It has been sometimes loosely said that an innkeeper is an insurer because he has a lien on the goods; but so has a mechanic doing work on an article, or a warehouseman on the goods stored; but they are not therefore insurers, and are exonerated from responsibility by showing they were guilty of no negligence. In Scotland, a loss by fire has been adjudged to be an inevitable casualty, which exonerates even a common carrier from responsibility. (2 *Kent's Com.* 598.) The only sound reason given in the books from Cayle's case (8 *Coke,* 32) down, is that the innkeeper shall be responsible for thieving or purloining by himself or his servants; but an incendiary fire does not fall within the reason of the rule, for by their total loss no one is gainer; and no innkeeper could participate in the plunder. In a late English case the same rule is adopted as in *Merritt* v. *Claghorn,* (5 *Adolph. & Ellis, N. S.* 164. *Dawson and Chauncey.*) "When chattels have been deposited in an inn and lost or injured, the presumption is that it was occasioned by the negligence of the innkeeper or his servants. But this presumption may be rebutted, and if the

Hulett *v.* Swift.

jury find in favor of the innkeeper as to negligence, he is entitled to succeed on the plea of not guilty." "In the present case," says Lord Denman, (action against an innkeeper,) "when the plaintiff had closed his evidence, the learned judge thought that there was a presumption of negligence and called on the defendant to answer. This he did by giving proof of such attention and skillful management as to convince the jury that the damage could not have been occasioned by the negligence imputed—that proof took away the ground of action according to all the authorities"—and this was a case of putting two horses in one stable, where one kicked the other, a thing possible to prevent. It is somewhat remarkable that in all the instances of the burning of inns, so frequent in this country, not a single case can be found where an action has been sustained for the value of property so destroyed by an accidental fire. *Richmond* v. *Smith*, (8 *Barn. & Cress.* 9,) was a case of theft of goods. *Piper* v. *Manny*, (21 *Wend.* 282,) was a case where butter put in a yard of the inn, by direction of the servant, was stolen. *Grinnell* v. *Cook*, (3 *Hill*, 485,) was a case of taking away horses without paying charges. The referee in his opinion (contrary to what was claimed by the plaintiffs) admits that such is the law in respect to innkeepers, but still finds for the plaintiffs on the ground that the proof of the defendant was not sufficient to rebut this presumption of negligence.

II. The opinion of the referee is erroneous and should be reversed. 1. He mistakes entirely the character of the evidence called for to rebut this presumption of negligence. He says: "There is no evidence as to the cause or origin of the fire; this is left entirely to conjecture; the law presumes it to have originated from some negligence of the innkeeper, his guests or servants, and this presumption is a controlling fact in the case, until it is repelled by proof to the contrary," and goes on to quote Judge Redfield. That one presumption, without proof, is not to counteract another presumption, to wit, that the fire was caused by negligence, &c. If the

referee had only remembered that the "presumption" of negligence in the innkeeper, was, (1.) A presumption of law, and not of fact, and (2.) That it applied solely to the loss of the goods, and not at all to the mode of the loss, he might not have fallen into the admission of a principle of exoneration by an innkeeper and yet practically denied its utility by setting up, or requiring a character of proof which could never be furnished, the existence of which would in fact show a miracle! When enquiring as a fact, how the fire originated, there is no presumption about it. The burden is simply on the defendant to show that neither he nor his servant or agents have been guilty of negligence as a fact, and this is made out by all such legal and legitimate proof, actual or presumptive, as prevails in ordinary investigations. It is simply trifling to say there is every presumption in favor of the theory that an incendiary caused the fire. But as you don't prove by a witness present that he saw the fire kindled, it is only presumption, and one presumption cannot overcome another presumption. The presumption of negligence, on the loss of the goods, does not "become a controlling fact in the case," &c. as asserted. It simply relieves the guest from proof of the fact, founded on considerations of public policy, and the case of negligence of the innkeeper is a fact to be ascertained like other facts in a cause by any legitimate evidence, from the direct testimony of witnesses, or from fair and ordinary presumptions; and as a plaintiff must make out his case, if this presumption of fact is well made in favor of the defendant, he must recover. Any other rule results in endless confusion, and is incapable of application. The sole point insisted on by the referee is that we did not positively show that the fire was the work of an incendiary. He thinks it was left to conjecture, and he conjectures also, (1.) Boarders or other guests might have fired it. (2.) The innkeeper himself. What right has a referee, in getting at the proof of a fact, to run into any such absurdities? There is not a particle of evidence in the case to favor either

of these conjectures; but everything against them. Not a foot is heard to stir in the house; the yard gates are locked; no entrance from without; the key hung in its place at the locking of the barn, and found there by Platt; and the barn door unlocked by him. And yet a "conjecture" in the face of all this proof is set up as of the same force as one sustained by every particle of it—a "conjecture" that some guest might have fired it. And so in respect to Mr. Balding, an infirm old man, not out of his bed until the fire was over, and he presumed to burn up his own and his guests' goods in the night! Why not "conjecture" he had a train laid for this special object as well? Presumptions of fact or of law arising out of the proof, are not to be classed for a moment with wild conjectures or possibilities hazarded in the face of all the proof. The result of the referee's doctrine would be to require positive proof from an eye witness in all cases that he saw the torch of the incendiary applied. But why is this any more conclusive? He may be mistaken or perjured. It may be an optical illusion. Nay, the improbability of his doing it at all in the presence of a witness might be urged with much more force against the fact than the double-headed conjecture with which the referee sweeps aside the force of sound legal presumption that an incendiary fired the barn. Look at the impossibility of complying with any such rule of evidence as the referee suggests. First, Mr. Balding must be examined, as to whether he arose quietly at midnight and climbed to the top of the barn and fired on the peak; but he is dead: so this is impossible, and no one knew but himself. Then every guest and every servant must in like manner be examined—casual guests scattered all over the country; and if one be missing, a "conjecture" immediately arises that he is the man. No amount or character of evidence is so overwhelming as to silence all conjecture. The defendants, in rebutting the presumption of negligence arising from the loss of the goods, showed, (1.) That the loss was occasioned by fire first discovered on the top of the roof,

Hulett *v.* Swift.

where it was therefore set on fire; then it communicated to the hay, and then rained down below upon horses and goods. (2.) That Mr. Balding, Mr. Wright and Mr. Isaac I. Platt were the only persons employed about the barn and premises; that on that evening all the gates were closed and locked; the barn doors were locked; the windows closed and everything secured; no one left in the yard; the lamp taken out and the keys hung on a nail in the hall. (3.) That about 1 o'clock A. M., when not a soul was up or awake in the inn, the fire began, arousing the inmates; that Mr. Balding did not get out to the fire; he was past 76 years of age, and the other two persons cannot say who set the barn on fire. (4.) That Mr. Hammond and others having horses there came out after Mr. Platt and did not save their horses. The whole case shows as clearly it was the work of an incendiary as any ever tried; no one else there, inside the premises—the torch came from without—the inference is irresistible, the presumption becomes proof, and not only neutralizes but destroys the legal presumption of negligence, arising on loss of the goods. But if not the work of an incendiary, so long as it occurred without the fault of Balding or his servants, he is not responsible. The report of the referee should be set aside and a new trial ordered.

*Wells & Dudley,* for the respondents. I. The liability of an innkeeper for the loss of the property of his guest, is the same as that of a common carrier. He is an insurer against every thing but the acts of God, the public enemy, or the guest himself. There is some difference among the courts of the different states as to the above rule, as in Vermont; some of them not holding the innkeeper to quite so severe a liability. In this state, however, such has always and uniformly been the rule. So also in Massachusetts; and such is the tendency of the decisions. *Parsons on Contracts,* (*vol.* 1, *p.* 623,) says: "Public policy imposes on an innkeeper a severe liability. The later, and, on the whole, pre-

vailing authorities, make him an insurer of the property committed to his care, against every thing but the act of God, or the public enemy, or the neglect or fraud of the owner of the property." In this state there has been no change or exception to the above rule that I have been able to find. In 14 *John.* 175, the point was raised, and the court expressly decide, that the goods being *infra hospitium,* "it is not necessary to prove negligence in the innkeeper to make him liable for the loss." In 21 *Wend.* 282–285, the court says: "The liability of the innkeeper is strict, and doubtless often severe, but not more so than that of common carriers; both are considered as insurers of the goods while in their keeping." The above opinions were no mere dicta, but in both of them the question of negligence was raised and expressly decided. The same point was raised and decided the same way in 5 *Barb.* 560, 564; 14 *id.* 193, 195; 12 *How. Pr. Rep.* 147, 151; 36 *Barb.* 70, 74. In this last case, Sutherland, Justice, says: "The liability of the innkeeper was an extraordinary liability, and made him in fact, an insurer of the safe keeping of the goods." And in 3 *Hill,* 485, 488, Bronson, J. says: "The innkeeper is bound to receive and entertain travelers, and is answerable for the goods of the guest, although they may be stolen, or *otherwise lost,* without any fault on his part. Like a common carrier, he is an insurer of the property." (*See also* 9 *Pick.* 284; 31 *Maine Rep.* 478.) Kent, in his *Commentaries,* (*vol.* 2, *p.* 592,) says: "Innkeepers are held responsible to as strict and severe an extent as common carriers." The referee, in his opinion, speaks of Kent as also saying: "That he is not responsible for losses occasioned by superior force, as robbery." (*See* 2 *Kent's Com.* 593.) We understand this passage rather as being a citation of what is contained and laid down in Cayle's case, than as being the commentator's opinion. It is clearly inconsistent with and contradicts what he before lays down as the true rule. From the above decisions, it is clear that the rule in this state is, and always has been,

that an innkeeper is an insurer, and liable to the same extent as a common carrier, for all losses in whatever way occurring, except such as arise from the act of God, the public enemy or the guest himself.

II. Even if we accept the referee's reading of Kent, and modify the rule so that the innkeeper should not be "responsible for losses occasioned by superior force, as robbery," it would not apply to this case. To constitute "superior force," it must be such as the innkeeper is utterly unable to guard against or resist; some irresistible power, like that of armed men, in a robbery, &c. by the direct agency of which the loss is occasioned. If some such force had caused the fire in question, and prevented the landlord and his servants from rescuing the goods, it might have come within such exception. But the fire doubtless was the result of accident, or the act of an incendiary; in neither of which cases was any superior force employed. Care and vigilance would have avoided the accident, or arrested the incendiary, or at least rescued the goods from destruction.

III. There is no distinction in the law, between the liability of an innkeeper in case of loss by fire, and his liability in case of theft, or other casualty. . The counsel for the defendant raised the point, before the referee, and urged it earnestly and ably, and the referee, in his opinion, seems in part to recognize such distinction. But we insist that there is no foundation for it, either in authority or in principle. The exceptions to the liability of the innkeeper, as defined and enumerated in all the cases, are confined to losses by the acts of God, the public enemy, or the guest himself. In this respect the rule is the same as with common carriers. In 21 *Wendell*, ( *p.* 236,) Bronson, J. says: "The liability of a carrier is like that of an innkeeper ;" and at page 238 he adds : "He, (the carrier,) is regarded as an insurer, and neither *destruction by fire* nor robbery by armed men will discharge him from liability." In *Parsons* v. *Monteath*, (13 *Barb.* 353, 357,) which was a case of loss by fire of property

in the keeping of a carrier, it was held the destruction of goods by fire was not an "act of God." "The act of God," as it is called, says Welles, J., "in order to excuse a common carrier, must be such an event as *could not happen by the intervention of man, nor be prevented by human prudence.*" The same question was decided in the same way in the next case, (13 *Barb.* 361,) which was taken to the court of appeals, and judgment of the supreme court affirmed. (6 *Selden,* 431, 437.) Willard, J. in his opinion says: "Common carriers are regarded as insurers, and are responsible for all injuries, except such as are occasioned by the acts of God and the public enemy. A destruction by fire, unless occasioned by lightning, does not fall within the exception." *Parson on Contracts,* (1 *vol. p.* 635,) defines the act of God to be "a cause which operates without any aid or interference from man." "So he (the carrier) is responsible for loss by fire, unless it be caused by lightning." In *Ingalsbee* v. *Wood,* (36 *Barb.* 452,) where the loss was occasioned by fire, but which was disposed of on the ground that the plaintiff was not a guest, the reasoning in the opinions given, concedes that if the party had been a guest, the defendant would have been liable. Potter, J. at page 458, says: "If the defendant could have enforced a lien upon the property, on his part, for the keeping of the horse, *then his liability to respond for the loss of the property clearly follows.* The lien and the liability stand or fall together. *The liability to his guest, like that of a common carrier to his employer, is not discharged by his showing that the fire was owing to no fault of his.*" Again, the difference between the Vermont cases, cited by the defendant's counsel and the referee, and those in our state, is not in any such distinction between the liability in case of fire and that in case of theft; but it consists merely in their relaxing, in all cases, the rigid rule held here, as to the general responsibility of innkeepers, and not holding them insurers like common carriers. There are two of these cases, viz: *Merritt* v. *Claghorn,* (23 *Vermont*

*R.* 177,) and *McDaniels* v. *Robinson*, (28 *id.* 337.) The first is a case of loss by fire; the second is loss from theft. Both cases hold the relaxed rule, viz: that the innkeeper is not liable as an insurer, or to the same extent as a common carrier. This is so as to loss by theft, as well as by fire, and they nowhere make any distinction in the liability resulting from the two casualties. Neither is there any foundation for such distinction in principle. The same reasons and the same public policy that hold the bailee to so strict vigilance against loss by theft, should exact from him, at least, an equal care and watchfulness against fire. The evil to be guarded against, both to the guest and the public, is surely as great in case of destruction of property by fire, as of its mere abstraction by theft. The same care that is required by law, which would be effectual to guard against theft, would be equally and more effectual against fire. The thief may frequently elude the watchfulness of the innkeeper, and escape with his plunder, while he would most certainly be detected, if any watchfulness is maintained, in case he should attempt to set fire to the property or buildings. At all events, discovery would take place in time to arrest the fire, or to rescue the goods of the guest, so that the destruction of property by fire, proves a much greater remissness and want of care in the bailee than its theft possibly could. Such a distinction, if adopted by the court, would involve them in the absurdity of holding an innkeeper liable where he relaxes his vigilance only long enough to enable the thief to snatch and escape with his spoil; but if he will increase or prolong his carelessness and remissness of duty, so that the thief can also, if disposed, set fire to the buildings, and until the fire can spread and get beyond his control and destroy his guest's property, then he will free himself from the responsibility. Such a rule would be the reverse of the old maxim, *majori culpæ gravior pœna.* It follows from the above, unless the court is disposed to abandon the long and uniform course of decision maintained in this state, in favor

of this recently adopted Vermont rule, that the innkeeper must be held to be an insurer against loss by fire as well as theft, unless the fire be caused by lightning or without any agency or interference from man.

IV. Adopting, for the sake of argument, the Vermont rule, and admitting that the innkeeper is not to be held as an insurer, and that his liability is based on negligence in fact, still, all the authorities agree in placing his responsibility next to that of the common carrier, and in holding the fact of the loss as a presumption against him of negligence. In order to clear himself from this presumption, he must show affirmatively that neither he nor his servants or inmates were in any way connected with the fire, and that it arose from causes beyond his control ; and to do this he must show the particular facts of the case — in what way and through what agency the casualty originated. (*See McDaniels* v. *Robinson,* 28 *Vermont Rep.* 337 ; 24 *Barb.* 388.) There was no such evidence attempted ; nothing appears in the case from which the referee could properly find how the fire originated. Instead of disproving the presumption of the law, the testimony rather confirms it by showing how easily Balding or some of his servants and inmates of the house might have gone out into the barn and caused the accident. Wright, the ostler, locked the barn at 9 o'clock and then hung the keys in the back hall near the door. There is no further testimony of any kind, as to what took place at the barn, until the fire was discovered, about half past 1 o'clock. From this it is plain that Mr. Balding, or any of the servants or inmates, might have taken the keys from the back hall, where they were hung after the ostler had come in, and gone out to the barn and set it on fire. The law presumes that the fire was in some way caused by the negligence of the landlord or his servants, and there is nothing in the testimony from which the referee could find to the contrary. The testimony throws no light whatever on the origin of the fire ; whether it was the act of the landlord or some of his inmates, or of an

incendiary, or the result of some of the numberless contingencies that might be imagined, it is impossible to say ; and hence the court must leave the presumption as the law makes it.   The answer of the defendant in effect admits it to be so ; its language is, "the said barn, by the act of an incendiary, *or by some unavoidable accident,*" &c. &c., was totally destroyed by fire.   The testimony as to the usage in not allowing smoking and loafers about the premises, &c. &c., is not at all in point and can have no bearing ; for the question is not as to the general character of the house or the habits of its inmates, but as to what occurred on the particular night and in connection with the fire.   It may be, that Mr. Balding had, up to this time, maintained the full degree of care over his guest's property required of him by the law, and yet, on this particular occasion, he has been remiss and has failed of his accustomed diligence.   It is no defense that he never failed before.

V.  The counsel for the defendant insisted, and the referee in this opinion apparently concedes, that if it had been shown that the fire was the work of an incendiary, the presumption of negligence against Balding would have been rebutted.   The case of *Merritt* v. *Claghorn,* (23 *Verm. R.* 177,) is cited on this point.   We regard that case as essentially different from the one in hand, and not at all applicable.   It was admitted in that case as will be seen by refering to it, "*that there was no negligence in the defendant or his servants in the care of the barn and of the property in question.*"   In making this admission the plaintiff, as it seems to us, surrendered his whole case, at least under the Vermont rule.   He thus admitted away not only the presumption, which the law made in his favor, but also all inference of negligence, in fact, in the defendant which might have been drawn from the testimony.   Negligence is the want of that care which the law requires in the particular case of a bailee. The degree of care required varies according to the nature of the bailment ; but the admission that the defendant was

guilty of no negligence, is an admission that the defendant had done all he could do and all that the law required of him. Redfield, J. in giving the opinion of the court remarked: "The case finds that the plaintiff's loss was without any negligence in point of fact in the defendant or his servants. From this we are to understand that no degree of diligence on his part could have prevented the loss. If then the defendant is liable, it must be for a loss beyond his control." Of course, in such a case there could be no recovery. Our case is entirely different. We make no such admission. On the contrary, we not only insist upon the presumption which the law makes against Balding, but we claim that the testimony establishes negligence in fact, on his part. The care required by law of a bailee, varies according to the nature of the bailment, and the omission which will amount to negligence, of course is in inverse proportion to the strictness of care required. From an innkeeper the highest degree of vigilance is required; and of course any failure at any time in such care is negligence, in fact, for which he is responsible. We insist that the case shows that Balding and his servants were thus negligent, and that they did not give to the property in question that degree of care which was proper, and which would have been effectual to preserve it. The property was of the large value of $1250; the gloves and mittens, amounting to $912, were of a character to be easily stolen and taken away; it was left alone, after 9 o'clock, without any watch or guard; the barn, from its situation, could oppose but slight obstruction to the burglar or incendiary; it stood open during the day time, and until in the evening, with its contents exposed, to tempt the cupidity of theives, plenty of whom must be hanging about the public resorts of a city like Poughkeepsie. Some of the testimony goes to show that one or more of the doors were left open; at all events, it would be an easy matter for any one to get them open. Now, we insist that all this was very careless in Mr. Balding; it was not observing that care

which was proper, and which any prudent man would devote to such an amount of property, and much less that higher degree of vigilance which the law exacts of the innkeeper. It must have been obvious to any prudent person, that there was great danger òf theft to property of that kind and value, and the strong likelihood is, if the fire was the act of an incendiary, that it was the work of one or more, who first helped themselves to what plunder they could take away, and then set fire to the building, to cover up their theft. We insist that it was proper, and required of Mr. Balding to have kept a closer watch and guard over the goods in question. It is usual, in many barns and stables, to have an apartment fixed for the ostler to stay in, as a guard and protection to the premises. If Mr. Balding wanted to keep his guest's property in his barns, he should have left some proper person there to protect it. Even if the fire was set by some incendiary, it*was none the less negligence in Balding to leave the premises so exposed and neglected that it could be entered and fired without discovery, and the flames have time to spread so that the property could not be rescued.

VI. The decision of the referee on the point that the defendant did not show Balding clear of negligence, is conclusive and final. It is a matter of fact. (2 *Whittaker's Practice,* 3d ed. *and case there cited.* 25 *How. Pr. Rep.* 425, 427. 30 *Barb.* 338.)

*By the Court,* BOCKES, J. The law is well settled, that innkeepers are held to extraordinary liability on grounds of public utility, growing out of the nature of their vocation. It is insisted that the rule of liability as to innkeepers is the same as that applicable to common carriers of goods — that they warrant the safe keeping of the property of their guests. In other words, that their liability is that of insurers. There can be no possible question, at this day, as to the law in regard to common carriers. They warrant the safe delivery of goods against all contingencies, except the act of God or

the public enemy. . The rule was laid down in *Dorr* v. *The New Jersey Steam . Navigation Company*, (11 *N. Y. Rep.* 485,) thus : . " A common carrier is responsible for all loss or damage except that which is caused by the act of God or the public enemy." It was held in this case that he might limit his. liability by an express. agreement with the owner of the property. This stringent rule has been rigorously adhered to by the courts. Judge Jewett says, in *Miller* v. *The Stean Navigation Company*, (10 *N. Y. Rep.* 431,) "The rule is not disputed that common carriers are responsible for every injury .done to goods intrusted to them to carry, unless it proceeds from the act of God or the enemies of the land." (2 *Kent*, 602. 10 *John.* 1. 11 *id.* 107. 6 *id.* 160. 21 *Wend.* 190. *Story on Bailment*, § 489, 490. 26 *Wend.* 591. 2 *Barb. S. C. R.* 326. 10 *id.* 612. 25 *N. Y. Rep.* 364. 39 *Barb.* 488. 31 *id.* 38.) Judge Cowen remarked, in *McArthur* v. *Sears*, (21. *Wend.* 196,) " No matter what degree of prudence may be exercised by the carrier and his servants ; although the delusion by which it is baffled or the force by which it is overcome be. inevitable, yet if it be the result of human means, the carrier is responsible." Destruction of property by accidental fire is not deemed to be by inevitable accident or the act of God, as are storms, lightning, earthquakes and tempests. . (1 *Term Rep.* 27. 5 *id.* 389. 10 *N. Y. Rep.* 431. 25 *id.* 364.) In this case, therefore, the property having been accidentally destroyed by fire while in the possession of the defendant's testator as innkeeper, he was answerable to the owner, if subject to the same rule. of liability as are common carriers. As regards this point there seems to be some confusion of authority. In a note to *Blackstone's Commentaries* it is said that an innkeeper's liability is not so extensive as that of a carrier, nor is he regarded, as a carrier is, in the light of a surety—that all losses, except those arising from inevitable force, the act of God, or the king's. enemies, are presumed to arise from the negligence of himself or his servants. But he may

Hulett *v.* Swift.

excuse himself by showing, if he can, that he and his ser-
vants were guilty of no negligence. In a note to *Morewood*
v. *Pollock*, (18 *Law and Eq. Rep.* 341,) it is said that the
liability or loss by fire, not occasioned through the defend-
ant's negligence, does not attach to innkeepers, and cites as
an authority for the remark, *Merrit* v. *Claghorn*, (23 *Verm.
Rep.* 177.) Judge Story in his work on *Bailment*, (§ 472,)
says : "Innkeepers are not responsible to the same extent as
common carriers. The loss of the goods of a guest, while at
an inn, will be presumptive evidence of negligence on the
part of the innkeeper, or of his domestics. But he may, if
he can, repel this presumption, by showing that there has
been no negligence whatever; or that the loss is attributable
to the personal negligence of the guest himself, or that it has
been occasioned by inevitable casualty or by superior force."
Remarks of similar import elsewhere occur in the books.
On the other hand it is said, an innkeeper, like a common
carrier, is an insurer of the goods of his guest, and he can
only limit his liability by an express agreement or notice.
(2 *Kent*, 594.) This was recognized as the rule of law, in
*Washburn* v. *Jones*, (14 *Barb.* 193,) in which case it was
held that an innkeeper was responsible for all losses and
damages happening, even without his default, excepting such
as were caused by inevitable accident or the public enemy,
and excepting also such as were occasioned by the fraud,
carelessness, or culpable neglect of the guest. In *Piper* v.
*Manny*, (21 *Wend.* 282,) Judge Nelson says, the liability of
the innkeeper is strict and doubtless often severe, but not
more so than that of the common carrier; both are consid-
ered *insurers* of the goods which are in their keeping. And
in another part of this opinion the same learned judge
remarks: "The only question in the case is, whether the
goods were received into the care and keeping of the inn-
keeper within the meaning of the terms of his common law
liability: that is, *infra hospitium.* If they were, the ques-
tion of *negligence* of the defendant or his servants has noth-

ing to do with the case;" thereby meaning, as I conceive, that in such case, the innkeeper would be deemed to be liable as an insurer of the property. In *Grinnell* v. *Cook*, (3 *Hill*, 485,) Judge Bronson says that an innkeeper, like a common carrier, is an insurer of the property, and nothing but the act of God or public enemies will excuse a loss. In *Mann* v. *Thompson*, (9 *Pick*. 280,) it was held that innkeepers, as well as common carriers, are regarded as insurers of the property committed to their care, and are bound to make restitution for any injury or loss not caused by the act of God or the common enemy, or the neglect or fault of the owner of the property. This case was criticised in *Grinnell* v. *Cook*, (3 *Hill*, 485,) and in *Ingalsbee* v. *Wood*, (36 *Barb*. 452,) but on a point distinct from this; and in the last case cited, Judge Potter says, " The liability of an innkeeper to his guest, like that of a common carrier to his employer, is not discharged by his showing that the fire was owing to no fault of his; but to an accident." In *Wells* v. *The Steam Navigation Co.*, (2 *N. Y. Rep.* 204,) Judge Bronson classes innkeepers with common carriers, and says, " It is perhaps a debatable question whether common carriers and innkeepers can contract for a more restricted liability than the law imposes on them in the absence of a special agreement. In *Hawley* v. *Smith*, (25 *Wend.* 642,) Judge Nelson says an innkeeper is not to be regarded as an insurer of goods without the inn; thereby intimating that he would be deemed an insurer for goods received *infra hospitium*. In *Shaw* v. *Berry*, (31 *Maine Rep.* 478,) the rule was declared to be, that an innkeeper was bound to keep the goods and chattels of his guest so that they should be actually safe; inevitable accidents, the acts of public enemies, the owners of the goods and their servants excepted; and that proof that there was no negligence in the innkeeper or his servants was not sufficient for his immunity. (*See also* 9 *Humph*. 746. 8 *Blackf*. 535.) It is said in *Parsons on Contracts*, that " Public policy imposes on an innkeeper a severe liability. The later,

and on the whole, prevailing authorities, make him an insurer of the property committed to his care, against every thing but the act of God, or the public enemy, or the neglect or fraud of the owner." (1 *Parsons on Contracts*, 623.) There is, I think, a very great preponderance of authority, both in this country and in England, in favor of the rule which renders an innkeeper liable as an insurer of the goods committed to his care by his guest; and that he cannot be discharged except by showing that the loss or damage was occasioned by the act of God or the public enemy, or occurred through the fault or neglect of the guest or his servants. The action is based on the common law liability, and as Mr. Justice Sutherland remarks, in *Gile* v. *Libby*, (36 *Barb.* 70,) might be either assumpsit or case. He adds; "In either case it is usual, and perhaps necessary, to allege in the declaration that the loss occurred by and through the carelessness of the innkeeper and his servants." This idea is in accordance with the remark of Mr. Justice Nelson in *Piper* v. *Manny*, (21 *Wend.* 282,) that if the goods be received into the care and custody of the innkeeper, within the meaning of the terms of his common law liability, the question of negligence of the defendant or his servants has nothing to do with the case. In such case the action is based on the common law liability, which makes the innkeeper responsible as insurer.

According to the authorities then, the liability of an innkeeper is of the same stringent character as is that of a common carrier—that is to say—both are to be deemed insurers of the property delivered to them, with consequent liability for loss and damage happening to it while in their possession, except when such loss or damage is occasioned by the act of God, or the public enemy, or through the fault of the owner. As regards the liability of a carrier, the law is too well settled to admit of possible doubt. (10 *N. Y. Rep.* 431. 11 *id.* 485. 25 *id.* 364. 26 *Wend.* 591.) In the last case cited, the chancellor declared the rule salutary, and expressed a hope that it would not be impaired.

The principle of public utility, which is the basis of this salutary rule in the case of common carriers, is equally applicable and potent in the case of innkeepers. Lord Holt states the reason of the rule. He says, that "If the common carrier was not held to this strict rule of accountability, it would be in his power to combine with robbers, or to pretend a robbery or some other accident, without a possibility of remedy to the party, inasmuch as the combination could be effected in such a clandestine manner as would render discovery impossible;" and he adds, "The law will not expose him to so great a temptation." Sir William Jones says: "He is treated as an insurer against all but the excepted perils, upon that distrust which an ancient writer has called the sinews of wisdom." (*Jones on Bailment*, 107.) Mr. Justice Best states the reason of the rule to be, that in case the goods should be lost or injured by the grossest negligence of the carrier or his servants, or stolen by them, or by thieves in collusion with them, the owner would be unable to prove either of these causes of loss. (5 *Bing.* 217.) These considerations are the basis of the law which obtains at the present day as to common carriers, and they apply to innkeepers, now, with equal propriety. It would be invidious and untruthful to say that innkeepers are now any more honest or trustworthy than are common carriers, and there is no reason or propriety in a rule which shall relieve one class from the effect of a legal presumption which in point of fact attaches to both alike. The rule should be altogether discarded or be adhered to, without unreasonable and arbitrary discrimination. If still salutary, as the decisions hold it to be, in one case, it is equally so in the other. Carriers and innkeepers are under legal obligation — the former to accept property offered for transportation, the latter such guests as present themselves, with their goods — and they are entitled to demand a reasonable compensation, and they have a lien on the property therefor. The carrier may demand recom-

pense commensurate with his extraordinary liability. So too may the innkeeper. Indeed they stand alike in all substantial points of duty, obligations and rights, as well public as private. I am constrained to say that unless we are prepared to make a distinction which impugns a principle, recognized and firmly established in the case of common carriers, we cannot relieve innkeepers from the rule which holds them liable, as insurers, with the exceptions above noted, against loss and damage to the goods of their guests, occurring when in their possession.

These considerations necessarily lead to an affirmance of the judgment.

Mr. Justice ROSEKRANS, concurring in the above conclusion, was also of the opinion that the judgment should be affirmed on the ground stated by the referee. He thought that negligence in law was established by the evidence, and that there was no sufficient evidence to repel it.

Judgment affirmed, with costs.

